WILLIAM SCOTT, JNO. SCOTT AND ALFRED WOOD v. MARTIN MAIER.

*Architects' "percentages."*

Architects' usage, especially if unknown to customers, will not entitle them to pay for preliminary sketches and estimates on the preposterous basis of a percentage on their own estimates. Such services, unless volunteered, should be paid for, if at all, according to the time spent upon them or according to such understanding as was had or was fairly implied from circumstances.

Error to the Superior Court of Detroit. (Chipman, J.) April 23.—April 29.

ASSUMPSIT. Defendant brings error. Reversed.

*Julian G. Dickinson* for appellant.

*George W. Radford* for appellees.

CAMPBELL, J. Plaintiffs, who are a firm of architects, sued defendant for services in preparing drawings for a proposed building, and recovered a verdict for one per cent. of the amount which they estimated the proposed building would cost ($17,000), making their commission $170. The suit was brought before any set of plans and specifications had been completed, and before defendant had ascertained or determined in what style and manner he would build, or at what expense. The declaration being on the common counts, particulars were demanded, and were as follows: "To services rendered as architects and preparing preliminary drawings for trunk factory, and making estimates of cost of same, being one per cent. of estimate of $17,000,—$170."

The drawings furnished, which defendant sent back, with a suggestion that he declined them, and would send for plaintiffs if he should want their further services, were floor sketches and a front elevation, which plaintiff Wood, who was the acting man, says he left with Maier for approval, and which,

as before stated were returned not approved. While pre-
paring the elevation Wood met Maier in the street, who asked
him what that building would cost. Wood says he said he
could not tell without calculating, but that could be done very
nearly. That while the elevation was in the draughtsman's
hands Wood and one of the Scotts figured that it would cost
about $17,000. Maier said he could get it done for $12,000,
but Wood said he could not. This was the last that occurred
before the papers were sent back. Maier criticised the cor-
nice as too showy, but Wood insisted it was not so.

There is some conflict in the testimony upon various mat-
ters, but in the view we take it is not important to consider
it in detail. There was testimony that Maier was told that
architect's charges would be two and a half per cent. on the
contract for plans, specifications, and superintendence of
building, and that he regarded such terms as fair. There is
no testimony that he was given any other information about
the expense of preliminary work, and the plaintiff's testimony
is clear that he never had any of the elements of the estimate
beyond the gross estimate of $17,000. It does not appear
that any instructions were ever given, or any conclusion
arrived at, as to the kind or quality or the details of building
material and other articles beyond such general talk and in-
structions as were had upon the preliminaries.

Plaintiffs' theory, without which they could not have re-
covered as they did, seems to have been that, by employing
an architect to make drawings which are not finally deter-
mined on, and asking his opinion of probable cost, the em-
ployer is bound to pay a percentage on a building such as the
architect sees fit to figure out, and at a price which he puts
upon its probable cost.

This seems to us an idea which has no foundation in law or
common sense, and unless such a basis of compensation was
specifically agreed on it cannot be allowed.

There is some reason for claiming that if a man is employed
to make preliminary sketches to enable a land-owner to deter-
mine what sort of building he may profitably erect, and in
what style and of what material it should be built, he should

not do the work without reward, provided such is the under-
standing. If, however, as the defendant here claimed, the
architect volunteered his services, with the chances of future
employment, it would be different. But it cannot be held
that in either case such preliminary work can be measured
by estimates of the cost of the architect's projected building.
No man in his senses will determine on going forward with
a factory until he has ascertained, not only just what he wants,
but what it will cost. It would always be for an architect's
interest, in such a case as this, if the plaintiffs are correct, to
make the plan as expensive as possible, instead of bringing
it within bounds. And until not only plans but specifications
are drawn up showing the kind, quality and amount of every
class of materials to be used, it would be impossible to count
the cost, or obtain the intelligent views of builders and
mechanics. From plans alone the quality of the material
could not be got at. They would not show the kind or grade
of brick, stone, wood or iron work, which might be of expens-
ive or cheap quality. Such plans as were shown here would
go but a little way in showing the character of the building
in any respect, and by themselves, could be of no avail except
as determining the appearance of the front, and the floor
arrangements, neither of which had been settled finally.

These papers cannot be deemed to have any intrinsic
value, and they could not avail defendant in their unfinished
condition. The only claim plaintiffs could have would be for
such time as was actually spent in their work, with the fair
understanding that they should be paid for so much as they
did, or with such circumstances as would compel defendant
to the duty of so understanding; but no custom of architects
can be received to fix it on any such basis as is here set up.
It is impossible in reason that it can be assumed as having
such a proportion of value to the complete plans and specifi-
cations and superintendence of a building during erection.
Such a custom, if it prevails, can bind no one who is not
made in some way aware of and assenting to it. It is too
unreasonable to stand alone. It would put every employer
at the mercy of an architect's extravagance in taste and license

of guessing at estimates which have nothing to measure them. It cannot be said that the testimony introduced had any lawful tendency to prove the value of plaintiffs' work, and the absence of any other kind of evidence would not make this appropriate. The court below held that if plaintiffs were employed they should, under the testimony, recover this sum claimed. We think that this was not correct.

The judgment must be reversed and a new trial granted.

The other Justices concurred.