## Nos. 13,680 and 13,941.

### THOMAS SULLY AND HAYWARD L. BURTON, LIQUIDATORS, VS. GEORGE K. PRATT.

#### SYLLABUS.

1. The fact that an owner, who had engaged an architect to design a building and prepare plans and specifications, afterwards changes his mind and does not erect the building, and that he has benefited nothing by what the architect did, while entitled to some weight in fixing the amount of compensation to be paid the architect, cannot, in the absence of an agreement to that effect, defeat the architect's recovery.

2. An intending builder, by calling upon an architect to prepare plans and speci fications which he afterwards receives, renders himself liable to pay for them whether they are used or not.

3. Courts will adopt with caution a rule which binds an owner to pay a percentage on a building such as the architect sees fit to figure out, and at a price which he, or the builders to whom he sends the plans put upon its probable cost.

4. There is in such a rule too much inducement to architects to make the plans expensive for it to be readily accepted.

5. An owner, who is not apprised of a schedule of charges obtaining among architects and had no knowledge of the same, is not to be held bound by such schedule.

A PPEAL from the Civil District Court, Parish of Orleans— *Ellis, J*

*Clegg & Quintero,* for Plaintiffs, Appellants and Appellees.

*James McConnel, Jr.,* for Defendant, Appellee and Appellant.

The opinion of the court was delivered by

BLANCHARD, J. The Sully, Burton & Stone Company, a limited corporation, of which plaintiffs are liquidators, conducted a general architectural and building business.

The defendant owned and controlled certain theatre properties in the City of New Orleans.

Certain theatrical people had a lease on this property which was soon to expire. They were desirous of renewing the lease for a term of years, provided one of the two theatres was remodeled and repaired and the other was replaced by a new, modern, up-to-date theatre building. Otherwise they would not lease the property.

Negotiations looking to the renewal of the lease of the theatres, the remodelling of one and the rebuilding of the other, were commenced in the Spring of 1897 and extended through the remainder of that year and into the beginning of 1898, when, on the 19th day of January, of the latter year they were abruptly ended by the total rejection on the part of the lessees of a drastic proposition relative to the renewal of the lease and the remodeling and rebuilding of the theatres submitted the day previous by the defendant.

Following this breaking off of the negotiations the defendant, it seems, leased the two theatres to other parties and thus avoided the necessity for large expenditures for repairs and rebuilding.

Undoubtedly, for months pending the negotiations with the former lessees it had been the intention of the defendant to rebuild that one of the theatres called The Academy of Music. That is to say, it was his intention to demolish the old building and erect another and larger and finer one upon its site.

To this end he engaged the services of the plaintiff company as architects to prepare the plans and specifications for the proposed building, which was to be a steel structure.

The plans and specifications were prepared, copies were furnished to certain firms of builders and contractors of large capacity and good repute and bids invited. Three bids were received, showing the cost of the building, as planned for, would be about one hundred thousand dollars.

Following this, the other copies of the plans and specifications in the hands of other builders, who had not yet submitted bids, were, it seems, returned, it having become known that the theatre would not be constructed.

Defendant, having decided not to erect the building, was presented by the architects with their bill for services rendered amounting to $3,500. This sum was arrived at by calculating 3½ per cent. upon what was considered would be the total cost of the structure—$100,000.

Defendant refused to pay it and this suit followed.

The petition alleges that the preparation and execution of the plans required great professional skill and the information acquired only by years of experience; that no price for the work had been agreed on. no contract entered into; and that the services rendered were well worth the charge made.

The answer of defendant admits that certain services and labor were

rendered and performed by the plaintiffs for which they are entitled to be paid, but denies that the same are worth exceeding five hundred dollars.

There was judgment in the court below in plaintiffs' favor for seven hundred dollars, and feeling aggrieved there at they prosecute this appeal. Defendant, subsequently, also took an order of appeal and both appeals are under consideration.

*Ruling*—There being no question of the employment of plaintiffs to design the building defendant proposed to erect, and to prepare the plans and specifications therefor, and plaintiffs having performed this service, the question at issue is narrowed down, in the absence of agreement as to compensation, to the amount plaintiffs are entitled to receive upon a *quantum meruit* for the professional skill employed and the work done.

It is well to state, however, that there is some conflict between the parties as to the fullness and completeness of the working plans in all necessary details..

As to this, the evidence satisfies us the plans stand the test—the building could have been erected by competent builders from the plans as furnished defendant by the architects. Indeed, a high degree of professional skill and competency in such work on the part of the plaintiffs is, we think, shown.

The fact that defendant afterwards changed his mind and did not erect the building, and that he has benefited nothing by what plaintiffs did, is, doubtless, entitled to some weight in fixing the amount of compensation to be paid the architects, but cannot, of course, in the absence of an agreement to that effect, defeat plaintiffs' recovery.

An intending builder, by calling upon an architect to prepare plans and specifications which he afterwards receives, renders himself liable to pay for them whether they are used or not. Am. & Eng. Ency. of Law (2nd Ed.), p. 816; Drescoll vs. Independent School District, 61 Iowa, 426; Kutts vs. Pelby, 20 Pick. (Mass.), 65; Chicago vs. Tilley, 103 U. S. 146; Webb vs. Scheval, 3 Phil. (Penn.), 125.

The American Institute of Architects has promulgated a schedule of prices for architectural work and plaintiffs' charges are based upon the same—one or more members of the firm being members or fellows of the institute. But it is shown that very few architects doing business in the City of New Orleans are, at this time, members of the institute, and it may not be said that any custom prevails there to charge for services according to the scale of the institute.

Defendant had not been apprised of this schedule and had no knowledge of the same. Much less did he assent to it.

The schedule of charges, then, of the institute may be useful in assisting the court to arrive at a proper estimate to be put upon plaintiffs' services, but can be given no greater weight.

The evidence shows that the custom obtaining among architects generally is to regulate their charges according to a rule of percentages. Thus, for preliminary studies, general drawings, specifications and details, and superintendence, where the building is erected, five per cent. appears to be the usual charge, and a less percentage, according to the work done and skill and time employed, where the building is not constructed, or the architect's employment does not include superintendence.

But courts will adpot with caution a rule which binds an employer to pay a percentage on a building such as the architect sees fit to figure out, and at a price which he, or the bidders to whom he sends the plans (as in this instance), put upon its probable cost. There is in such a rule too much inducement to architects to make the plan expensive for it to be readily accepted by those called upon to sit in judgment in matters of controversy between owners and architects. Scott vs. Maier, 56 Mich. 554.

Under the facts and circumstances of this case, we think the charge of 3½ per cent upon a one hundred thousand dollar valuation for the building which defendant contemplated erecting is unreasonable.

Had the building been erected pursuant to the plans and under the superintendence of plaintiffs, we do not say five per cent. upon its cost would have been too great a charge.

But where the building was not erected, and no benefit to defendant resulted from his employment of the plaintiffs, we incline to the opinion that a greater reduction than is here shown, from the maximum of five per cent. (where the building is erected), should be made.

On the other hand, our reading of this record has led to the conclusion that, if plaintiffs have overestimated the charge they should make, defendant and the trial court have greatly underestimated it.

There is dispute between the litigants as to the maximum limit with regard to the cost put upon the proposed building by the defendant.

He insists it was $75,000.

The plaintiff Sully and the witness Rowles testify the cost was to be $100,000 and that they got this estimate from the defendant.

Rowles was the manager in New Orleans of the theatrical firm

which was negotiating for the lease or renewal of the lease upon the basis of the remodeling of one of the theatres and the reconstruction anew of the other, and, as such, had conferences with the defendant about the rebuilding of the theatre, and with his architects about the design and plans for the new building. He was called as a witness for plaintiffs. He had testified in chief that the estimate of cost talked of was one hundred thousand dollars, and on cross-examination by defendant's counsel being asked the question:

"You said something about one hundred thousand dollars being the cost of the proposed new building. Where did you get that information from?"

Answer: "From Dr. Pratt."

So that the preponderance of evidence seems to sustain the contention of plaintiffs that $100,000, and not $75,000, was the cost limit indicated by the defendant in his conferences with the architects and the theatrical people in regard to the new building.

The view most favorable to defendant that could be taken of this is to adopt as the basis of the cost of the building, in the calucatïon to be made to arrive at the compensation to be paid plaintiffs, a sum midway between what defendant fixes as the maximum limit indicated by him and what plaintiffs' evidence shows it to have been.

This sum is $87,500, and the same accords with the preliminary estimate of the cost of the proposed building obtained prior to the preparation of the plans, upon sketches made and submitted to certain builders and contractors then erecting large structures in New Orleans.

For the professional skill and labor exerted by plaintiffs, the work they did and the plans and specifications furnished, the weight of evidence sustains a charge of 2½ per cent. upon the cost of the building as not unreasonable, even in a case like this where the proposition to erect the building finally fell through.

Two and one-half per cent. upon $87,500 is $2,187.50. Of this sum, to be on the safe side, we will allow seventeen hundred and fifty dollars as meeting out justice as near as can be between the parties, according to our appreciation of the case.

It is ordered, adjudged and decreed that the judgment appealed from be amended by increasing the same to the sum of seventeen hundred and fifty dollars, with five per cent. per annum interest thereon from judicial demand until paid, and that defendant pay costs of both courts.

Rehearing refused.