## KENYON *v.* CHARLEVOIX IMPROVEMENT CO.

1. CUSTOM—CONTRACTS.
   A custom, to be binding upon contracting parties, must be known to them, or so open and notorious that they must be presumed to have contracted with reference to it.

2. SAME—LOCALITY.
   A custom existing only in one county will not bind a party residing elsewhere, who had no notice of it.

3. ABSTRACTORS—SERVICES—COPIES.
   Where an abstractor agreed to bring defendant's abstract down to date, get 400 copies of it printed, and attach his certificate that the printed copy was correct, he could recover only the customary fee for one original abstract, his necessary disbursements, and the reasonable value of his services for the clerical work in making the copies and certifying to their correctness.   Per GRANT and MONTGOMERY, JJ.

4. SAME—CERTIFICATES OF CORRECTNESS.
   Certificates by an abstractor that certain printed papers are correct copies of an abstract involve something more valuable than the mere clerical work in making them, and, in the absence of an express agreement as to the price to be paid therefor, he should be allowed to recover their reasonable value.   Per HOOKER, C. J., and MOORE, J.

5. SAME.

> The plaintiff in such case should recover what *his* services were
> worth, not what an ordinary clerk could demand for such
> services, nor the value of the certificates to the defendant.
> Per CARPENTER, J.

Error to Charlevoix; Mayne, J. Submitted June 3,
1903. (Docket No. 15.) Decided December 1, 1903.

*Assumpsit* by Frank A. Kenyon against the Charlevoix
Improvement Company for services rendered. From a
judgment for plaintiff, defendant brings error. Reversed.

Plaintiff is the register of deeds of Charlevoix county,
and under a contract with the board of supervisors kept
up a set of abstract books owned by the county. He re-
ceived fees for abstracts as his compensation. Charles
M. Heald was president of the defendant company, and
resided in Detroit. A contract was entered into between
plaintiff and defendant, through Mr. Heald, evidenced
alone by the following correspondence:

"DETROIT, MICH., August 24, 1901.
"REGISTER OF DEEDS,
        "Charlevoix, Mich.
  "*Dear Sir:* Herewith I inclose the abstract of title
covering what was formerly known as the Dickson land,
now Lindsay Park Addition to Charlevoix. I wish you
would please bring this down to date, and then I would
like to ask that you get a bid from one of your printers to
print say 400 copies of the abstract, such abstract to bear
your certificate that the printed copy is correct. Will
you kindly give this matter your early attention, and very
much oblige,
                "Yours truly,
                        "CHARLES M. HEALD,
                                "President."

"CHARLEVOIX, MICH., August 27, 1901.
"CHARLEVOIX IMPROVEMENT COMPANY,
                        "Detroit, Mich..
  "As you requested, I have secured a price for printing
400 copies of the abstract of Lindsay Park, which is $15.

I think it would be a good plan to have the certificate of the county treasurer in regard to the taxes. You didn't mention this, but most parties require tax history with abstract.

"Awaiting your reply, I am,

"Very respectfully yours,
"FRANK A. KENYON,
"Abstractor."

"Mr. FRANK A. KENYON, Abstractor,
"Charlevoix, Mich.

"*Dear Sir:* In reply to your favor of the 27th inst., please bring the abstract down to date, showing therein the sale of the Chicago & West Michigan Railway to the Pere Marquette Railroad, and have 400 copies of the abstract printed as per your letter. I would also be glad if you would have the certificate of the county treasurer in regard to the taxes prepared, and I will thank you very much if you will give these matters early attention.

"Yours truly,
"CHARLES M. HEALD,
"President."

After completion of the work contracted for, plaintiff rendered a bill therefor of $500. The defendant, considering the bill exorbitant, declined to pay it, and returned the papers. Plaintiff declined to receive the papers, and instituted this suit to recover for his services. His bill of particulars reads as follows:

| | |
|---|---|
| To services in revising and correcting record title to the property known as Lindsay Park Addition to the Village of Charlevoix, and furnishing 400 abstracts thereof | $1,000 |
| To furnishing 400 abstracts of title of Lindsay Park Addition to the Village of Charlevoix, at $2.50 | $1,000 |
| To furnishing 400 tax histories of Lindsay Park Addition to the Village of Charlevoix, made by Henry C. Cooper, and by him assigned to plaintiff, at 50c. | $200 |

Plaintiff recovered verdict and judgment for $500.

*Frederick W. Stevens* (*Charles McPherson*, of counsel), for appellant.

*J. M. Harris* and *A. B. Nicholas*, for appellee.

Grant, J. (*after stating the facts*). The errors assigned relate exclusively to the rulings of the court upon the measure of recovery. The usual price charged by plaintiff and fixed by the board of supervisors for making the abstract was $19.75. The printer's bill was $30. This increase in the printer's bill over the price stated in plaintiff's letter was due to a change after the printing was begun. He claims to have paid the county treasurer $60. If these are all legitimate charges, plaintiff recovered $390.25 for his services in reading proof, assembling, signing, and sealing 400 printed copies. Plaintiff testified that he could do this work in two days. One Adams, register of deeds of Antrim county, a witness for plaintiff, testified that he could sign and seal the 400 copies in two or three hours; that all the proof reading could be done in about an hour; and that the printer does all the rest of the work. Three witnesses, including plaintiff, all abstractors of more or less experience in the counties where they resided and did business, testified in his behalf on the value of these services, and the method of computing them. Upon cross-examination the court refused to permit the defendant's counsel to show the value of the time spent by the plaintiff in reading proof, assembling, signing, and sealing the copies. Plaintiff rendered a bill for $500, filed a bill of particulars claiming $1,200, testified that he charged defendant $2.50 each for his work on the 400, and 50 cents each for the tax certificates, and that the original abstract was worth $19.75, making a total of $1,219.75. One of his witnesses fixed the value at $1,975, another at $770; while the expert witnesses for the defendant, including Mr. Clarence M. Burton, of Detroit, whose abstract business is the most extensive in the State, testified that they usually made no charges for such copies.

When one seeks to recover hundreds of dollars for a few hours' work, he must be able to show either an express contract, or a custom known to the contracting parties, or so open and notorious that the parties must in law be held to have contracted with reference to it. *Lamb* v. *Hen-*

*derson*, 63 Mich. 302 (29 N. W. 732); *Scott* v. *Maier*, 56 Mich. 554 (23 N. W. 218, 56 Am. Rep. 402); *Schurr* v. *Savigny*, 85 Mich. 144 (48 N. W. 547); *Eaton* v. *Gladwell*, 108 Mich. 678 (66 N. W. 598). If such a custom had existed locally in Charlevoix county, that would not bind a party residing elsewhere, who had no notice or knowledge of it. *Pennell* v. *Transportation Co.*, 94 Mich. 247 (53 N. W. 1049); *Eaton* v. *Gladwell*, 108 Mich. 678 (66 N. W. 598); *Hutchings* v. *Ladd*, 16 Mich. 493. See, also, *Milligan* v. *Furniture Co.*, 111 Mich. 629 (70 N. W. 133); *Reynolds* v. *Insurance Co.*, 36 Mich. 131, 142. The defendant in this case had no notice or knowledge of any such custom. No custom was shown. Each witness for the plaintiff arrived at the damages upon a different basis, as is evidenced by the fact that no two agreed upon the measure of damages. One witness, when asked what 400 printed copies, like those here in issue, would be worth, testified:

"400 abstracts would come to $7,700. If I were making 400, I shouldn't discount it less than one-tenth; making $770 as the least I would do the work for."

He immediately testified that he meant a discount of 90 per cent. When asked on cross-examination what was the basis for such a charge, he replied:

"Well, sir, if I were in the abstract business, I should protect my business. I would estimate or calculate that in 20 years I should abstract at least half of those lots. * * * To a certain extent I base my charge of $770 upon the earnings I would lose during the next 20 years."

Such testimony is, of course, too indefinite and uncertain to furnish any basis for damages. If there was no custom controlling the price of such copies, the rule of damages would be their actual value. The time spent in the work and the value of such time are, in such a case, important elements. Plaintiff arbitrarily charged $2.50 apiece for the copies. He could as well have charged any other sum. He might as well have charged $19.75 for

each as an original abstract, or $7,700 for the lot.  But it is not claimed that defendant contracted for 400 originals. He asked plaintiff to bring the abstract down to date, and to get a bid for printing 400 copies, with his certificate attached that the printed copy is correct.  To this plaintiff replied that the printing of the copies would cost $15, and suggested that the certificate of the county treasurer should be attached.  Defendant replied, in substance, to have the work done "as per your letter."  The contract is contained in these three letters.  Plaintiff thereby agreed to bring defendant's abstract down to date, to get 400 copies printed, to attach his certificate of the correctness of the copy, and to obtain the certificate of the county treasurer as to taxes.  For these services the defendant agreed to pay the customary fees for the abstract, $15 for printing the copies, and a reasonable price for the other work, as to which no price was mentioned.  The contract was for one abstract and four hundred copies.  Fees for making abstracts are based upon elements hereinafter referred to.  Upon this no question arises.  These copies had no additional value because certified by the abstractor to be correct copies.  The copies would be just as valuable and useful if certified by any other person, official or layman, to be correct.  The work of making copies of documents and certifying to their correctness is not enhanced in value by the fact that it is done by a lawyer, doctor, or abstractor. If some question had arisen upon the validity of defendant's title under the abstract, and it had obtained the opinion of a lawyer as to its validity, and, desiring to have copies of such opinion to give to parties to whom it might sell lots, should contract with the lawyer to make a certain number of copies of his opinion, and attach his signature thereto that they were correct copies of the original, the basis of the lawyer's charge, if no price was agreed upon, would be the value of one opinion, and the value of his services for clerical work in making the copies and certifying to their correctness.  If a doctor should give a patient a prescription, and the patient should ask him to make copies

thereof, and certify to their correctness, the doctor could charge for the one prescription, and for the copies only the reasonable value of his time and services in making them. An article may be of great value to the party to whom it is furnished, but that is not the criterion of the price to be paid.  A machine may be useless for want of a piece broken or lost.  When replaced by another, it enables the purchaser to make large profits.  If not replaced, he makes great losses.  But the implied contract is to pay only what the piece of machinery is reasonably worth.  I can see no other reasonable basis for the plaintiff's services in this case in making the copies.  It is conceded he cannot recover for them as originals.  He cannot recover the value to the defendant.  There is no custom or basis for an arbitrary price.  He cannot recover because he or his successor may lose some abstracts in the future.  If he desired to get pay for such uncertain damages, he should have declined to make the copies, or should have informed the defendant beforehand of the price he would charge. He chose, however, to rest upon an implied contract to pay what his services were worth.

Three elements of value enter into an abstractor's charges: (1) The use of the capital invested; (2) the services of the abstractor in preparing the abstract; (3) the liability of the abstractor to the purchaser of the abstract for damages resulting from defects in the abstract.  This liability extends only to the person for whom the abstract is made, and not the grantee.  1 Am. & Eng. Enc. Law (2d Ed.), 221. This liability of the plaintiff was not enlarged by certifying to copies.  This would have been the same if he had made but the one abstract.  Under the rulings and instruction of the court, defendant would be compelled to pay upon a basis or custom with reference to which it did not contract, and to pay nearly $400 for not to exceed two days' work, which required no skill and entailed no liability.  It might have been $1,200 under plaintiff's bill of particulars and testimony.

The court should have admitted the testimony as to the

value of the time spent in the work; should have instructed the jury that no custom had been established; and that the prospective loss of earnings in the abstract business on account of the 400 printed copies was too remote and uncertain to constitute an element of value.

The judgment should be reversed, and new trial ordered.

MONTGOMERY, J., concurred with GRANT, J.

HOOKER, C. J. I concur in the result reached by my Brother GRANT for the reason that the charge of the court left to the jury the opportunity to increase the compensation of the plaintiff upon the ground that it was the general custom of abstractors to base their charges for copies upon transfers, when no such custom was proved, even if it would have been admissible had it been proved. It was sufficient to allow the plaintiff to recover reasonable compensation for his services in regard to the printing, and the reasonable value of his certificates appended to the 400 printed copies of the abstract.

The defendant might have had these copies printed without asking plaintiff to see to it; but the judge properly refused to instruct the jury that such certificates were worth no more than the value of the time consumed in the physical labor of signing plaintiff's name. The certificate that those copies were correct abstracts (or correct copies of an abstract, which would amount to the same thing) involved something more than the mere signing of a name. It carried with it certain evidence of value to the defendant, or any other person who should have occasion to use a copy of the abstract. It was proper for the defendant's counsel to cross-examine regarding the amount and value of time consumed, as that was an element of value. I doubt if the case should be reversed on the ground of the rulings in relation to the latter subject, in view of what occurred upon the trial.

Judgment reversed.

MOORE, J., concurred with HOOKER, C. J.

Carpenter, J.   I agree that the judgment should be reversed because the court erred in not permitting defendant to show the value of the time required to make the certificates, and because the evidence did not establish a custom.   I agree with my Brother Grant that the measure of recovery for the certificates made by plaintiff is the reasonable value of plaintiff's services, and not the value of the certificates to defendant.   I cannot, however, agree, with him that the value of those services is to be measured by what an ordinary clerk could demand for similar services.   I think plaintiff's services were in fact more valuable than as if performed by an ordinary clerk; and this fact, together with the inferences that may properly be drawn from the circumstances under which the services were rendered, entitled plaintiff, in my judgment, to receive what *his* services are worth.   Plaintiff was not bound, in my judgment, to take less for the time spent in reading proof and making these certificates than his time was worth in his ordinary occupation.