His Honor, 'CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, us follows:
Plaintiff claims commission as an architect for drawing plans and specifications for defendant at his request for the building o'f a house. He thus sets out his claim:
For consultations relative to the services to be rendered to defendant and for making sketches and fixing approximate value of premises prior to purchase............... $25.00
For supervision in connection with the demolition and clearing site.................... $10.CO
For three-fifths of six per cent on $19,586.00 estimated cost of erection................ $489.09
For consultations in .adjusting rentals and procuring sub-estimates .................... $150.00
Making a total of ........................... $684.09
The defendant admitted having employed the plaintiff, but on the condition that the building would not exceed $12,000 in cost, while the building set forth in plaintiff’s plans could not be built for less than $14,268.40; that he *96 rejected plaintiff’s plans, did not nse them, returned them to plaintiff, and built .a house through a contractor on tlie latter’s own plans.
There was judgment for defendant and plaintiff has appealed.
The evidence is that on March 22nd, 1913, the defendant addressed a letter to the plaintiff requesting him to prepare plans and specifications for a building to cost inside of $8,000. Plaintiff prepared the plans whieli were submitted to Julius Koch, an architect and builder, who made a bid exceeding $14,268.40 for their erection. Thereupon defendant wrote to plaintiff to do nothing with the drawing of such a costly building which was so much more than his limit. Repeated conferences were held between the plaintiff, the defendant, and the prospective lessees of the buildings to be erected with a view of reducing the cost.
The defendant then addressed the following letter:
“O. P. Mohr,
“Dear Sir.:
“As my former tenant has agreed to lease the new building for which you are to draw up plans and specifications, I would ask that when you have both settled on plan adopted, that you submit the same to me for my approval. One thing I would impress you with I do not care to go over $12,000 for complete building ready for tenant to move in.
“Very truly yours,
“Julian M. Swoop.”
It does not seem that the plaintiff made any attempt to so modify his plans as to bring the cost of the building down to $12,000, but his efforts seem to have been directed to inducing the tenants to raise their rent, and to *97 convince the defendant that he would be getting a first class building, the cost of which would be lessened to him by the returns of some $2,000 which the adjoining owners would have to make to him for their share of the cost of the two dividing walls. In this he failed. On or about April 21st the plaintiff sent to defendant a bill for $50 for adjusting an insurance claim. This displeased the defendant and was one of the reasons which made him lose confidence in plaintiff. He then again consulted Julius Koch concerning the erection of the building and gave him the contract for $12,500, the contractor .to recover and keep whatever amount he could collect from the neighbors for their half share of the cost of the wall. On April 30th, the defendant wrote to the plaintiffs “I have given my building over to a general contractor to put up for me, making his own plans and specifications.”
Julius Koch put up the building. He was not a witness in the case. Although his draughtsman testifies that they did not use plaintiff’s plans, the building is the same in appearance and distribution, and it is evident he had the advantage of plaintiff’s previous work.
We think that defendant could not thus summarily dismiss plaintiff without compensation. There was no fault found with plaintiff’s plans; they were correct in a technical and architectural point of view. The only objection to them was that they provided for too substantial and expensive a building. But the cost thereof could have been reduced so as to come below $12,000 if plaintiff had been given, an opportunity, by a change in the quality and quantity of the materials and workmanship used, such as bricks, glass, etc., by a diminution in the thickness of the side walls as was subsequently done. In other words what Julius Koch did, the plaintiff could have equally done on request.
*98 Opinion and decree December 20th, 1915.
Rehearing refused, January 17th, 1916.
The law does not hold down the architect to a precise cost of the building; .an approximate figure is sufficient.
6 Cyc., 31; 74 Tex. 61; 99 Ga., 260; 25 S. E., 619.
But inasmuch as the plaintiff was limited to plans for a building not to cost more than $12,000 the rate of his commission cannot be based on a larger amount. An architect who has performed part of his contract and is prevented from completing it by the act of. the other party is entitled to compensation for the work actually performed.
103 U. S., 146.
But -in fixing the amount of that compensation Courts are not bound by any schedule it may have pleased the American Institute of Architects to adopt, especially when the plaintiff is not a member of that institute, and the owner is not shown to have had any knowledge of its rates.
Sully vs. Pratt, 106 La., 601.
It does not appear that the plaintiff was engaged more than one month in the services he rendered defendant. We think a commission of two per cent or two hundred and forty dollars will be adequate compensation. This is exclusive of the $36 admitted by defendant. The item of $150 is rejected.
It is therefore ordered that the judgment of the District Court be reversed and that there now be judgment in favor of plaintiff and against the defendant in the sum of two hundred and forty dollars with legal interest from May 2nd, 1913 till paid and all costs of both. Courts.
Judgment reversed.