[No. 14051.   Department Two.   July 16, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. S. WARBURTON, *Appellant*.[1]

INTOXICATING LIQUORS—ILLEGAL SHIPMENT—CRIMINAL LIABILITY— SHIPPER. One who, in the state of Illinois, delivers a shipment of liquor to a common carrier to be transported to this state, without having secured a permit as required by the prohibition law, Rem. Code, § 6262-1 *et seq.*, is criminally responsible therefor as a participant and instigator of the offense, if not as the actual shipper; there being no distinction between principals and accessories.

SAME—ILLEGAL SHIPMENT—CRIMINAL LIABILITY—ACTS OF AGENT. One who ships liquor into this state in violation of the prohibition law, through the instrumentality of an agent, is liable as though he had personally participated, although out of the jurisdiction; and a common carrier may be made the agent in this sense.

SAME—ILLEGAL SHIPMENT—JURISDICTION—VENUE. The shipment of liquor into this state in violation of the prohibition law, through the instrumentality of a common carrier, is a continuing act, cognizable in the jurisdiction where the shipment terminated, and the venue is properly laid at the place of termination.

[1]Reported in 166 Pac. 615.

SAME—ILLEGAL SHIPMENT— STATUTES — CONSTRUCTION—"WITHIN" AND "INTO." Rem. Code, § 6262-18, prohibiting the shipment of liquor "within" the state without first securing a permit therefor, prohibits shipments "into" the state, in view of the evident intent and purpose of the act as a prohibition measure supplanting former regulative provisions, the act providing with particularity how a permit may be obtained to ship liquors from places outside the state into the state.

STATUTES—EXECUTIVE CONSTRUCTION. Executive construction of an initiative measure, while not a controlling circumstance, is persuasive as to its proper meaning.

COMMERCE—INTERSTATE COMMERCE—INTOXICATING LIQUORS—STATE REGULATION. The prohibition initiative measure (Laws 1915, p. 2) relating to intoxicating liquors, in so far as it regulates shipments into the state, is not an unlawful interference with interstate commerce; since, by the Webb-Kenyon act, 37 U. S. Stat. at L., p. 699, ch. 90, Congress, in declaring unlawful the shipment of intoxicating liquors into a state to be received, possessed, sold or used in violation of any law of such state, has divested intoxicating liquors of their interstate character in so far as the power of the state to regulate the sale and disposition is concerned.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered October 31, 1916, upon a trial and conviction of unlawfully importing liquor into the state. Affirmed.

*S. Warburton* and *Boyle, Brockway & Boyle,* for appellant.

*Fred G. Remann* and *Geo. M. Thompson,* for respondent.

FULLERTON, J.—The appellant, while in the city of Chicago, Illinois, on his way to Tacoma, Washington, purchased nineteen gallons of whiskey and placed the same in a trunk which he checked with a railway company at Chicago for carriage to Tacoma as ordinary baggage. The trunk with its contents was carried by the railway company to Tacoma. The appellant on his arrival at Tacoma paid the excess baggage charges and delivered the baggage check to a transfer company with directions to procure the baggage and convey it to his place of residence in that city. The appellant had

no permit to import liquors within or into the state, nor was any permit such as is provided by the statute known as Initiative Measure No. 3 (Rem. Code, § 6262-1 *et seq.*), attached to the trunk containing the liquor. The appellant did not have or acquire personal possession of the liquor in the state of Washington. Prior to the time he delivered the baggage check to the transfer company, it had been seized by the officers of the law under a search warrant, and has not since been delivered to him. Shortly after the seizure, the appellant was arrested on a warrant from a justice's court of Pierce county issued on a complaint charging:

"That on the 14th day of June, 1916, at Tacoma, in Pierce county, state of Washington, John Doe then and there being did then and there unlawfully ship into the state of Washington intoxicating liquor without having attached to the parcel containing said liquor a permit as required by law, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Washington."

To the complaint, the appellant entered a plea of not guilty, and was tried thereon, the trial resulting in a judgment of conviction. From the judgment the appellant prosecuted an appeal to the superior court, where he was again convicted and adjudged to pay a fine. From the last mentioned judgment, the present appeal is prosecuted.

Noticing the assignments of error in the order in which they are presented by the appellant's learned counsel in their brief, the first is that there is a fatal variance between the charge and the proofs. Attention is called to the fact that the complaint lays the venue of the offense in the state of Washington, and it is argued that the appellant's connection with the shipment ceased in the state of Illinois when the appellant delivered the trunk containing the liquors to a common carrier in that state to be brought into the state of Washington as a part of his baggage, and in consequence there is no evidence to sustain the charge that the appellant shipped the liquor into the last named state. Stated in an-

other form, the contention is that the appellant is not liable
to answer for the act of the common carrier, notwithstanding
he.was a party to the act and the instigator and cause of
the act.   But this is not the rule.   In criminal law, all par-
ticipants, however so participating, are actors.   One who
procures the commission of an offense, or counsels, aids, or
abets another in its commission, is a participant therein and
equally guilty with the actual perpetrator of the offense.   On
this principle, a person is criminally answerable for the com-
mission of an unlawful act which he causes to be done through
the agency of another.   So here, if it be in violation of the
laws of the state of Washington to ship intoxicating liquor
therein in the manner in which this liquor was shipped, the
appellant is criminally liable therefor, if not as the actual
perpetrator of the offense, then as the procuring cause of
such offense and as an aider and abettor therein.   We think
it plain, also, that the state of Washington had jurisdiction
of the offense and that the venue of the offense was properly
laid in Pierce county.   The act was essentially a continuing
act whose performance was begun when the liquor was de-
livered to the carrier in the state of Illinois for shipment, and
was completed when it was carried to its destination in the
state of Washington.   As a continuing act extending over
different jurisdictions, it is cognizable as an offense in that
jurisdiction whose laws are violated by the commission of
the act.

These principles are so well understood as hardly to require
authority for their support.   At common law, in misde-
meanors there are no accessories; all concerned are prin-
cipals, whether instigators, perpetrators, or aiders and abet-
tors of the criminal act; Wharton's Criminal Law (8th ed.),
§ 261; and by statute in this state the principle is extended
to felonies; Rem. Code, § 2260.   The authorities are all to
the effect that a principal who procures an unlawful act to
be done through the instrumentality of an agent is as much
liable as if he actually and personally participated therein;

Wharton's Criminal Law (8th ed.), § 266; and this, though he may have procured the act to be done while out of the jurisdiction against which the offense is committed; Id., § 288. It is uniformly held, also, that a common carrier may be made the agent in this sense. *State v. Intoxicating Liquors*, 98 Me. 464, 57 Atl. 798; *State v. O'Neil*, 58 Vt. 140, 2 Atl. 586, 56 Am. Rep. 557; *Pilgreen v. State*, 71 Ala. 368; *United States v. Freeman*, 239 U. S. 117.

The last cited case is authority, moreover, for the proposition that the transportation of intoxicating liquors through the instrumentality of a common carrier from one jurisdiction to another is a continuing act, cognizable in the jurisdiction where the shipment terminated. That was an indictment under the Federal criminal code making it a punishable offense to ship from one state into another any package containing intoxicating liquor unless the package be so labeled on its outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity of liquor contained therein. The liquor was delivered to the carrier at Joplin, Missouri, in six unlabeled trunks to be carried into Cherokee county, Kansas. The indictment was returned in the district of Kansas, and the defendant moved to quash for want of jurisdiction, contending that the offense denounced by the statute was complete when the liquors were delivered to the carrier for shipment, and therefore cognizable only at the place of shipment and not cognizable at the place of destination where the indictment was found. The trial court sustained the contention, but its judgment was reversed on the appeal, the court holding that the act of shipment was a continuing act and hence cognizable in the district court of Kansas.

The principles announced in these authorities clearly lead to the conclusion that there is no variance between the charge and the proofs, and that jurisdiction over the offense is vested in the courts of Pierce county, the place of termination of the shipment.

The second contention is that the act in question does not and was not intended to regulate or prohibit the shipments of liquor from points outside of the state into the state, but was intended to and does in terms regulate and prohibit intrastate shipments only; that is, shipments from one point within the state to another point therein. But while the section of the act containing the prohibition uses the word "within" instead of the word "into" in prescribing the conditions upon which shipments of intoxicating liquors may be made (Laws 1915, p. 2, ch. 2, § 18; Rem. Code, § 6262-18), we have no doubt that the word was used in the latter sense. Any other construction would render the act meaningless. If it is permissible to ship such liquors from points without the state into the state without restrictions as to manner or quantity, the act is useless as a restrictive or prohibitive measure. It simply opens the doors to an unrestrained traffic in intoxicating liquors, doing away with the regulative provisions which the law theretofore threw around it. The act is not to be given that interpretation unless no other alternative is presented. It is true, as the appellant argues, the ordinary meaning of "within" is not "into," but the courts in construing the meaning of statutes are not confined to nice discriminations as to the meaning of particular words. Statutes are construed according to their evident intent and purpose, and if a word is found therein which, when given its literal meaning, leads to the absurd result of destroying the purposes of the act, the courts will give it a substituted meaning. This is but saying that, when the purpose and well ascertained object of a statute are inconsistent with the precise words, the latter must yield to the controlling influence of the legislative will resulting from the act as a whole. A reading of this act as a whole leaves no doubt as to its evident intent. It not only prohibits shipments of intoxicating liquor without a permit, but provides with minuteness and particularity how a permit may be obtained to ship liquors from places outside

of the state into the state, provisions wholly senseless if the unrestricted importation of such liquors was contemplated.

The construction we have put upon the act is the construction put upon it by the *Attorney General* of the state and by the executive officers who are charged with the duty of its enforcement. Permits for the importation of the limited quantities prescribed by the act are constantly being issued by the county auditors charged with the duty of issuing permits, and while this is not a controlling circumstance, it is at least persuasive as to its proper meaning. It is well to remember in this connection that this is an initiative measure, framed and adopted by the people apart from the legislature proper, and that it is the officers elected by the people who have given it this construction. See, also, *State v. Great Northern R. Co.*, ante p. 137, 165 Pac. 1073, 167 Pac. 1117.

The final contention is that, to construe the act as prohibitory of the importation of intoxicating liquors without a permit from places outside of the state to places in the state, is to render it obnoxious to the commerce clause of the Federal constitution. This question we shall not discuss at length. Whether the act is in violation of the clause of the constitution cited depends upon the meaning given to the act of Congress of March 1, 1913, known as the Webb-Kenyon act (37 U. S. Stat. at L. p. 699; U. S. Comp. St. 1916, § 8739). It is a Federal question ultimately determinable by the supreme court of the United States. A number of cases involving the proper interpretation of the act have been before that court, the latest of which is the case of *Clark Distilling Co. v. Western Maryland R. Co.*, 242 U. S. 311, Ann. Cas. 1917B 845, L. R. A. 1917B 1218. In that case, as we read it, the court holds the act to be constitutional, and construes it as authorizing legislation by the several states prohibiting, regulating, or controlling the interstate shipment or transportation of intoxicating liquor. This being the meaning of the act, it authorizes the legislation under which the appellant is prosecuted. This is in accord with the conclusion reached by us in

the case of *Gottstein v. Lister*, 88 Wash. 462, 153 Pac. 595, wherein the constitutionality of the initiative measure was attacked. Speaking of the Webb-Kenyon act, we there said, at page 514:

"Nothing could seem plainer than that, by the terms of this act of Congress, the dealing in and shipment of intoxicating liquors are no longer exempt in any degree from state regulation by the fact that such liquor may be an article of interstate commerce. In other words, intoxicating liquors are, by the terms of this act, divested of their interstate character, in so far as the power of the state to regulate the sale and disposition thereof, and the shipment into the state for that purpose, is concerned."

Our conclusion is that the judgment of conviction must stand affirmed. It is so ordered.

ELLIS, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.