JONES, Judge ad hoc.
The plaintiffs, who are the members of an architectural firm in the City of New Orleans, bring this suit seeking the recovery of $1,699.71, which they allege is due them by the defendant for architectural fees as a result of their employment by said defendant. In the alternative, they allege that, if the court should find that they had no verbal contract of employment with said defendant, then they are entitled to recover on quantum meruit.
Defendant denies in the answer that he ever employed the plaintiffs and, even though he admits the plaintiffs performed certain services for him, he alleges that these services were for a building which cost greatly in excess of the amount that he had intended to spend. Defendant further admitted paying the plaintiffs $200 for their services, but denied owing any further amount.
The trial court rendered judgment rejecting the plaintiffs’ demand for recovery on the contract, 'but awarded plaintiffs $200, with legal interest from judicial demand, on the alternative demand (quantum meruit). The plaintiffs have appealed from said judgment.
The facts in this case show that during the latter part of the year 1946 the defendant was desirous of constructing a building in Houma, Louisiana, and that he was contracted by a contractor — D. D. Pittman —who sought to obtain said work. Some few days later the defendant and his wife called on Mr. Pittman, at the latter’s home in the City of New Orleans, to further discuss the proposed building. At this time, Mr. Pittman called in one of the plaintiffs, Mr. Fuhrmann, who entered into the discussion with the parties heretofore named. The evidence shows that the defendant and his wife desired to build a brick and tile store building with a residence on the second story and, at this time, they had in mind a building that would cost in the neighborhood of between $15,000 and $20,000. At this meeting, the plaintiff Fuhrmann testified that he explained his duties to the defendants and what he would charge for his services, but this is denied by them. It was, however, agreed at said meeting that Fuhrmann, the architect, would prepare a preliminary sketch of the building and contact the defendant in the immediate future. Some two weeks later, these plaintiffs went to the home of the defendant at Houma, .Louisiana with a preliminary sketch of the two-story building, as heretofore d&scribed, and discussed said sketch with the defendant and his wife. Some slight changes were suggested by the defendant and, accordingly, the plaintiffs returned to New Orleans and revised the sketch and, some two weeks thereafter, they again went to the defendant’s home, where they had a general discussion regarding the building. It was at this second meeting that the plaintiffs testify they stated to- the defendant that their fees for architectural services would be six percent (6%) of the cost of the building, and they further testify they definitely explained to the defendant that they would prepare the drawings, plans and specifications and secure the bids for 75 percent of 6 percent of the cost of the building and that the remaining portion of the fee was to be paid when they super *232 vised the construction of the building. Further, at this meeting, the plaintiffs handed •to the defendant a copy of the American Institute of Architects Standard Form of Agreement between Owner and Architect, and they testify that they told the defendant that they worked along the lines which the agreement called for. The plaintiffs testify that, at the conclusion of this meeting, the defendant told them to go ahead with the plans for the building. About one week after this second meeting, defendant notified the 'plaintiffs that he did not desire to build the apartment above the store for the reason that his mother-in-law had died. So, on November 24, 1946, the plaintiffs again visited the defendant and obtained from him the description of the building he then desired to build, which (as is shown) was a one-story building with three units. On January 5, 1947, the plaintiffs again visited the defendant at his home, at which time they took a partially completed drawing of a one-story building to the defendant and discussed the construction of this building at some length. It was at this meeting, the plaintiffs testify, that they asked Mr. D. D. Pittman, the contractor, in the presence of the defendant and his wife, about the possible cost of the building, in order that there might be no misunderstanding. They testify that Mr. Pittman made the statement that the building would cost about $45,000 and, of course, they are corroborated in this by the contractor, Mr. Pittman. Plaintiffs testify that, after the estimate was made by the contractor, they asked the defendant if they should continue with the plans for this building and the defendant replied. “Yes, if I haven’t got the money, the bank has”. Accordingly, the plaintiffs returned to the City of New Orleans and again worked on completing the plans and specifications. About ten days thereafter, they sent the defendant a bill for $500, for the first payment on account, and on February 17th they received a check for $200, along with a letter from the defendant. On February 19, 1947 the plaintiffs mailed the completed plans and specifications to the defendant, with a bill for $800. Sometime thereafter, the defendant notified the plaintiffs to advertise for bids from contractors other than Pittman, the lowest of these being that of Mr. Pittman in the sum of $42,215.81. The defendant decided not to build and notified the plaintiffs to stop their architectural work and send their bill. Accordingly, the plaintiffs billed defendant for the amount herein sued for. Defendant denied that he owed the amount, but did write to the plaintiffs to the effect that, since he had decided not to build, he would be willing to pay them an additional $200 for their services.
The questions to be decided herein are: Did the parties enter into a contract for the plaintiffs to furnish architectural, services to the defendant for a fee of 6 percent of the cost of the building, and, if not, are the plaintiffs entitled to recover on a quantum meruit? There can be no question but what certain essential elements must be present before there can be a valid contract. Article 1779 of the Civil Code. One of these essential elements is that consent must be legally given and, in order for consent to be legally given, there must have been a common intent. See Article 1945 of the Revised Civil Code. It is argued by counsel for defendant, and so held by the trial judge, that this common intent was lacking and, therefore, there was no valid contract entered into between the parties. The testimony of the plaintiffs in this case showed that, at the time they had the second meeting with the defendant at his home in Houma, Louisiana, they explained to him in detail the nature of their duties and further outlined to him specifically the percentage of the cost of the building that they would charge for their services. They further testify that, at this meeting, they handed to the defendant a copy of the American Institute of Architects Standard Form of Agreement between Owner and Architect and stated they would work along the lines which the agreement called for. We note that, in Article 8 of the petition, it is alleged that this agreement was given to the defendant by the plaintiff Fuhrmann and, even though said article is denied in the answer, the defendant admitted on the witness stand that said agreement was given to him. *233 After this agreement was given to the defendant, the plaintiffs testify they were instructed by him to proceed with the work and this testimony of the plaintiffs is corroborated by that of the defendant, who, when ¡being asked about the discussion that took place between him and the plaintiffs on the second meeting, testified at page 138 of the transcript as follows:
"Q. You understood then that you were to pay Mr. Fuhrmann and Mr. Geier for their services? A. I understood they were going to charge me six percent on the cost of the building.
“Q. And you told them to go ahead and make the working drawings and plans for the building? A. Thafs it."
There is other evidence by the defendant to show that, at subsequent meetings, he was willing to pay the architects for their services 6 percent of the cost of the building. Thus, we are satisfied from the record that, as a result of the conversations, the plaintiffs were to receive 6 percent of the cost of the building for their services as architects. However, it is shown that, at the second meeting, the plaintiffs handed to the defendant the American Institute of Architects Standard Form of Agreement between Owner and Architect, which was to be used as a guide between them. This form was not signed by the parties, nor were the blanks therein filled out, such as the percentage the architects were to receive for their services. However, since the parties agreed that the architectural work was being performed under the terms and conditions of this written form, it must ibe considered as a part of their contract. It, therefore, becomes necessary to examine the Form, filed in evidence and marked “P-1”, in order to determine if the plaintiffs have complied with the terms and conditions thereof.
The only two paragraphs of this form of agreement that are necessary to consider, in disposing of this case, are paragraphs No. 5 and No. 8. The first of these, or paragraph No. 5, provides the manner in which payments to the architect shall be made on account of his fee and it is shown that when the architect has completed the preliminary studies he is to receive a sum equal to 20 percent of the básic rate, computed upon a reasonable estimated cost. The preliminary studies by the architects in this case were not actually completed until January 5, 1947 and immediately thereafter they sent the defendant a bill for $500, which constituted substantially 20 percent of the basic rate of the estimated cost of the building as fixed by the contractor at $45,000. Consequently, we do not consider that the plaintiffs, under the circumstances, violated the provisions of Paragraph No. 5 of the Form. Further than this, Paragraph No. 5 has to do with payment to the architect and, therefore, sets out primarily an obligation on the part of the defendant to pay upon a certain percentage on a reasonable estimated cost. In addition to this, we are not convinced by a reading of the paragraph that the duty devolved upon the architect to compute the reasonable estimated cost. As an illustration, the computation, under the very wording of the paragraph, could have even been made by the contractor.
Paragraph No. 8 of this Form provides that the architect, when requested to do so, will furnish preliminary estimates on the cost of the work. (Italics mine.) It is argued by counsel for defendant that these preliminary estimates were not furnished by the architect and he, therefore, violated this provision of the agreement. It is further argued that, if these preliminary estimates had been furnished, the defendant would have realized the building was costing too much and could have withdrawn from the contract. There is not one scintilla of evidence in this record to show that the defendant ever requested the architect to furnish him with preliminary estimates on the cost of the work and, in the absence of such request, the failure of said architects to furnish such preliminary estimates could not and does not constitute a violation by the plaintiffs of Paragraph No. 8 of the form of agreement.
As we are of the firm opinion that the defendant understood the verbal agreement and since the plaintiffs have complied with the written form of agreement, which became a part of the contract between the *234 parties, then the plaintiffs are entitled to recover herein on said contract if the defendant understood prior to the drafting- of the final plans and specifications the cost of the building he was to construct.
It is true that originally this defendant did not contemplate a building which would cost in excess of $15,000 or $20,000, but it is admitted by him that, after several discussions, the contractor (Mr. Pittman) told him that the building he contemplated building would cost about $40,000. After this information was given to the defendant, he permitted the preliminary studies to continue and various sketches and drawings to be made. Finally, on January 5, 1947, the plaintiffs presented a scale model of a one-story building to the defendant and the testimony of the plaintiffs, as well as Mr. Pittman, shows that the plaintiffs asked Mr. Pittman at that time, in the presence of the defendant, what the probable cost of the building would be. The testimony shows that Mr. Pittman answered that it would be about $45,000 and, further, that when the defendant was asked if he wanted to go ahead with the building he replied: “Yes, if I haven’t got the money, the bank has”. It is true that the defendant and -his wife denied that Mr. Pittman made the estimate of $45,000 Ibut, upon being questioned about the statement which he made, to the effect that if he did not have the money the bank had it, the defendant answered: “Well, that was in joking business”. Further than this, the defendant’s wife testified that she knew about Mr. Pittman estimating the building would cost $40,000, but that he did not make an estimate of $45,000. As a matter of fact, the testimony reflects that no one heard Mr. Pittman make the estimate of $40,000 on the two-story building to the defendant except the defendant and this was quite some time prior to January 5th, when the estimate was made on the one-story building. The testimony of the defendant’s wife shows that when defendant made the statement that if he did not have the money the bank had it was when the parties had a scale model of the one-story building before them. Thus, the statement by the defendant relative to the bank having the money was in answer to the estimate of how much the one-story building would cost and we are convinced that the defendant understood that the building would cost about $45,000.
We have reviewed the cases of McDonnell v. Dreyfous, 144 La. 891, 81 So. 383, and Sully et al. v. Pratt, 106 La. 601, 31 So. 161, which are strongly relied on by the defendant. However, in the McDonnell case the architect agreed to prepare plans for a building to cost about $50,000 and the plans which were prepared called for a building that would cost $69,000 a-nd, consequently, the owner was held not liable to the architect for the plans. In the Sully case, while it is true the owner engaged the services of the architect to prepare plans for a building costing $100,000, the owner was not apprised of the schedule of charges, which were on a percentage basis, and had no knowledge of same. As a matter of fact, the charges were fixed by the architect in accordance with a schedule obtaining among architects. The court, accordingly, held that the defendant owner was not bound by such schedule.
The above cases are not controlling here for the reason that the facts of the said cases differ from the facts of this case. Here the defendant agreed to pay a certain percentage, which was understood by him, and he further understood the cost of the building was to be about $45,000.
Accordingly, for the above and foregoing reasons, the judgment of the lower court will be reversed and there will be judgment in favor of the plaintiffs and against the defendants in the full sum of $1,699.71, with legal interest from date of judicial demand until paid; appellees to pay all costs.