[No. 35588. Department Two. March 30, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. WARREN W. SCHOEL, *Appellant*.\*

*James V. McCabe*, for appellant.

*Ray E. Munson*, for respondent.

DONWORTH, J.—Appellant has been three times tried and convicted of the murder of Sergeant Frank B. Williams on the morning of October 4, 1956.

\*Reported in 360 P. (2d) 561.

The homicide occurred in appellant's home in Yakima, where he found the deceased and appellant's wife in a very compromising situation. When they paid no attention to his remonstrances, appellant fatally shot Williams with his .22 caliber pistol. He also wounded his wife at the same time.

We need not set forth the events which immediately preceded or followed the homicide. It is sufficient to say that, at the third trial (which is before us on this appeal), the state produced evidence which, if believed by the jury, was sufficient to support the verdict of guilty of murder in the second degree.

Therefore, unless the trial court committed prejudicial error in one or more of the instances specified in appellant's assignments of error, the judgment and sentence must be affirmed.

The chronological history of the prosecution of appellant for this homicide may be summarized as follows:

October 6, 1956. Original information filed charging appellant with first-degree assault upon his wife.

February 21, 1957. Amended information filed containing two counts, charging:

1. First-degree murder of Frank B. Williams on October 4, 1956.

2. First-degree assault upon his wife committed at the same time.

April 29, 1957. Prosecutor elected to proceed on first count of amended information.

May 6, 1957. Trial began on first count.

May 20, 1957. Jury returned a verdict of guilty of second-degree murder.

August 30, 1957. Trial court ordered a new trial, principally because of the erroneous admission of certain immaterial and prejudicial evidence.

October 28, 1957. Second trial began. Appellant moved for dismissal of first count on the ground that he could not be tried again for murder in the first degree because the verdict in the first trial (guilty in the second degree) amounted to an acquittal as to the charge of murder in

the first degree, and hence he was being placed in jeopardy twice for the same offense. This motion was denied.

November 8, 1957. Jury returned a verdict of guilty of murder in the first degree. From judgment and sentence on this verdict, appellant appealed to this court.

July 2, 1959. This court reversed the judgment and sentence and granted a new trial. See 54 Wn. (2d) 388, 341 P. (2d) 481 (1959).

August 26, 1959. New information filed charging appellant with murder in the second degree for the slaying of Frank B. Williams.

October 23, 1959. Appellant moved to dismiss the information on the ground of former jeopardy. This motion was denied.

November 19, 1959. Appellant entered a plea of not guilty and former jeopardy.

December 7, 1959. Third trial began. The motion to dismiss was renewed and denied.

December 17, 1959. The jury returned a verdict of guilty of murder in the second degree.

December 18, 1959. Motions in arrest of judgment and for a new trial filed.

January 22, 1960. Order denying motions entered.

January 28, 1960. Judgment and sentence of forty-five years' confinement in the penitentiary signed and filed.

The appeal now before us is taken from the last mentioned judgment and sentence.

Of appellant's eight assignments of error, five are directed to the court's refusal to give certain requested instructions, and three relate to the denial of appellant's motion to dismiss the amended information (on the plea of former jeopardy) and the denial of his two post-conviction motions.

We shall first consider the claimed errors concerning the court's ruling that there was no merit in appellant's contention that in this case he has been put twice in jeopardy for the same offense, in violation of Art. I, § 9, of the state constitution and the fifth amendment to the United States constitution.

Appellant's argument that his rights under this section have been violated are stated in his brief as follows:

"The conviction of first degree murder at the second trial was illegal as held in State v. Schoel, supra. However at the same trial the jury was instructed that they could bring in a verdict of guilty of murder in the second degree if the facts so warranted. In the case of *State v. Murphy*, 13 Wash. 229, which was cited with approval in State v. Schoel, supra, the court held that where the defendant had been recharged with first degree murder after the jury, at a prior first degree murder trial, had brought in a second degree murder conviction, that the first conviction of second degree murder was an acquittal of the first degree murder and subjected the appellant to double jeopardy; but that as the jury in the second trial again returned a verdict of second degree murder, that the error in again charging the defendant with first degree murder was not prejudicial and said second degree conviction was sustained.

"In the present case under the holding State v. Murphy, supra, the jury could have returned a verdict of guilty of murder in the second degree and said verdict would have been clearly and absolutely valid, therefore, appellant was in *real peril* of having a valid and binding judgment rendered against him, which would constitute his being placed in jeopardy for said second degree murder charge.

"The appellant by being recharged by an amended information with said second degree murder and subjected to trial thereon December 7, 1959, was placed in jeopardy twice for the same offense. The appellant, by his special plea of not guilty by reason of double jeopardy and his oral motion to dismiss the information on the ground that said information placed the appellant in jeopardy twice for the same offense, which was made at the start of the third trial, after the jury was sworn and jeopardy attached, timely brought said defense of double jeopardy to the court's attention and the court erred in overruling said plea and motion."

■ The law of this case is established by the majority decision in *State v. Schoel*, 54 Wn. (2d) 388, 341 P. (2d) 481 (1959), which concluded as follows:

"We hereby overrule *State v. Ash, supra* [68 Wash. 194, 122 Pac. 995], and reinstate the rule of *State v. Murphy, supra* [13 Wash. 229, 43 Pac. 44], which is in accord with the views of the United States Supreme Court, and grant

to the defendant his constitutional right to assert the defense of former jeopardy.

"The judgment on the verdict of first-degree murder is therefore set aside and the cause is remanded for a new trial."

The only meaning that can be given to this language is that the case was remanded to the trial court for a new trial on the charge of murder *in the second degree.* Having sustained appellant's plea of double jeopardy as to the charge of murder *in the first degree,* this court certainly was not ordering a new trial for him on that charge. He was immunized by the majority decision against another trial for that alleged offense. He had not, on the prior appeal, raised any question as to the state's right to try him again for second-degree murder.

The remittitur of this court remanded the cause for a new trial. Obviously, the only new trial that was possible under the circumstances was for second degree murder. If appellant's present contention (*i.e.* that he was also entitled to be immunized against another trial for the included offense of second-degree murder) is valid, the remittitur should have remanded the cause with instructions to discharge appellant from custody. *Cf. State v. Robinson,* 12 Wash. 349, 41 Pac. 51 (1895), quoted in the majority opinion.

Consequently, the law of the case is that appellant could not be again tried for first-degree murder of Frank B. Williams, but our direction to the trial court in the decision on the prior appeal that appellant was entitled to a new trial necessarily referred to a new trial as to the included offense of murder in the second degree.

At the opening of the third trial, counsel for both parties made an extensive argument to the court regarding appellant's motion to dismiss on the ground of double jeopardy. The court took the matter under advisement overnight and read all the decisions cited by counsel, and some others in addition. The court's oral decision discusses some of these cases and pertinently points out the state of the record in this case at that time:

"Now, the court realizes that counsel claim that there was no error in the second trial in the included charge of second degree murder, and the defendant here seems to be saying that as to that charge he appealed nothing and waived nothing so far as the second degree murder is concerned so that the plea of double jeopardy is now available to him. Of course, the fact is that when the appeal was taken, it afforded a new trial to the defendant on the entire trial and all the issues present in the second trial were before the court, and could have been presented to the Supreme Court on the appeal of that case. I just can't make anything of that position, that because [in] the second trial there was no error and no appeal taken from it, so far as the included offenses is concerned, that that affords the defendant a plea of double jeopardy. No Washington case has been cited to me, of course, and I have found no [ne] factually similar to the present case. . . .

" . . .

"Now, of course, finally our Supreme Court in this case has ordered this trial, has ordered the case remanded for a new trial. I suppose the simplest and easiest method for this court to have dealt with this motion is merely to point to the last sentence in that opinion. However a good deal of work had been done in preparing this motion, and, in passing on it, the court is no doubt obliged to pass on the authorities submitted to him; also it appears to this court that the Supreme Court at the time of the review of this case had all of these matters before it. Now, they may not have been urged, but they were not urged in the case in which I quoted from Judge Finley,[1] and yet he commented on the possibility of the double jeopardy plea when it was remanded for trial.

"It appears to me to have some weight here, too. Had the Supreme Court felt, in remanding this trial, had they thought that in so doing it was subjecting the defendant to double jeopardy, it would not have remanded the trial. It could have either dismissed the case or remanded the case with instructions that the case be dismissed, and, of course, that is reading something into the opinion that may not be there. Certainly, the language of the opinion is clear and certain as a mandate to this court to proceed with this trial. So the motion of the defendant will be denied."

---

[1] *In re Johnson v. Cranor*, 43 Wn. (2d) 200, 260 P. (2d) 873 (1953).

The reasoning of the trial court in denying appellant's motion to dismiss the case appeals to us as being sound. The last two paragraphs above quoted accord with our ideas as to the applicability of the law of the case doctrine.

If appellant was aggrieved with the directions given to the trial court in our remittitur, he could have called this court's attention to the matter by a petition for rehearing or other appropriate means. Since this was not done, the trial court had no alternative but to follow the mandate of this court on the former appeal.

We, therefore, hold that the trial court did not err in denying appellant's plea of former jeopardy (*i.e.* the denial of appellant's motion to dismiss the information made at the beginning of the third trial and his motion for arrest of judgment made after the verdict was received).

▇ There remains for our consideration the five assignments of error predicated on the court's refusal to give certain instructions requested by appellant. These proposed instructions relate to the defense of self-defense and of justifiable homicide based upon the theory that it reasonably appeared to appellant that a felonious assault was being committed upon his wife by the decedent. The trial court, in instruction No. 9, generally defined justifiable homicide as follows:

"Homicide is justifiable when committed either in the lawful defense of the slayer, or his or her husband, wife, parent, child, brother or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person, slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished."

Instruction No. 15, in part, instructed the jury:

". . . A person may act in the protection of himself or to any such person named above [in instruction No. 9] upon circumstances as they reasonably and honestly appear to him at the moment; and if he does act honestly and reasonably as the danger appears to him at the time under all the circumstances, the law will not hold him responsible, even though he was guilty of misjudgment and exaggeration of the danger as it actually was. . . ."

While we do not feel that these instructions necessarily should be held out as models of precision or clarity, we do feel that they did adequately apprise the jury of the law regarding appellant's defenses under RCW 9.48.170. *Cf. State v. Evans,* 57 Wn. (2d) 288, 356 P. (2d) 589 (1960), and *Atkeson v. Puget Transp. Co.,* 139 Wash. 552, 247 Pac. 956 (1926).

The judgment of the trial court is affirmed.

HILL, WEAVER, OTT, and HUNTER, JJ., concur.