[No. 36971.   En Banc.   November 10, 1965.]

JOAN DOLE et al., *Respondents,* v. HOMER GOEBEL, *Appellant.**

*Reported in 407 P.2d 807.

*Nashem & Prediletto* and *Norman R. Nashem, Jr.,* for appellant.

*Kern, Dano & Cone,* for respondents.

HILL, J.—This is a host-guest case. The parties were neighbors in Ellensburg. The plaintiffs, Mrs. Anna M. Dole and her two minor daughters (Joan and Gertrude) had accepted the invitation of the defendant Homer Goebel to ride with him from Ellensburg to Yakima. The trip proved uneventful until the Goebel automobile entered a construction area just north of Yakima. There U. S. Highway No. 97 was narrowed, first to two southbound lanes and one northbound lane and, then, to one lane for north and one lane for southbound traffic.

With traffic thus limited to two lanes, the southbound Goebel car had a head-on collision in the northbound lane with a northbound car driven by Paul Rogers.

The plaintiffs brought this action against the defendant Goebel to recover for the damages sustained by them, and

from a judgment for the plaintiffs, based on a jury verdict in their favor, the defendant appeals.

There is no claim that the damages were excessive; but it is urged that the evidence of gross negligence was not sufficient to take the case to the jury; and there are additional claims of trial errors.

■ Mr. Goebel did not testify. His counsel suggests that he, somehow, skidded into the northbound lane due to some unknown cause. A state patrolman testified that between a scale house less than 2 miles north of the point of impact and the point of impact itself there were, on the morning of the accident, three "Slow" signs, three "35 Miles per Hour" signs, two "Keep Right" signs, one "Form Single Lane Right" sign, one "Form one Lane" sign, and three "No Passing, Stay in Line" signs. One of the "No Passing, Stay in Line" signs was located at the beginning of the curve on which the collision occurred. A short distance north of the point of collision, there was a line of rubber traffic cones so placed as to force southbound traffic into the right-hand lane. Flashing amber lights were placed at each end of these traffic cones.

There is evidence in the record from which the jury could have concluded that defendant, in violation of all the warning signs and devices and traveling in excess of the posted 35 miles-per-hour speed limit, attempted to pass a preceding vehicle on a curve and collided head on with a car in the northbound lane. Even omitting all reference to excessive speed and attempts to pass preceding cars, the unexplained presence of the defendant's southbound car in the northbound traffic lane, under the existing circumstances, would be sufficient to take the issue of gross negligence to the jury.

■ Whether it was properly presented to the jury by the instructions given by the trial court is the next question for consideration; and several of the assignments of error relate to this area of inquiry.

The court gave instruction No. 4, which was in part:

A party is not entitled to recover solely because there has been an accident. The plaintiffs claiming gross neg-

ligence have the burden of proving by a fair preponderance of the evidence, that the defendant was grossly negligent in some one of the particulars claimed, and that such gross negligence was a proximate cause of the injury and damages claimed.

. . . .

"Negligence" means a violation of law or a lack of ordinary care, which is the failure to do something which a reasonably careful person would do, or doing something he would not do under circumstances similar to those shown by the evidence.

"Gross negligence" means the failure of the host driver to use slight care for the safety of the guest passengers.

Gross negligence was again referred to in instruction No. 9 as follows:

The violation, if you find there was such a violation, of a statute governing the operation of motor vehicles is negligence as a matter of law. However, such a violation is not necessarily gross negligence; whether or not it constitutes gross negligence is a question for you to decide under these instructions.

It is not contended that these instructions were erroneous, but it is urged that they were not adequate to advise the jury as to the distinction between ordinary negligence and gross negligence. The defendant appellant assigns error to the refusal to give seven[1] proposed instructions, which it is insisted would have clarified that distinction and made it intelligible to the jury. Two of these proposed instructions merit discussion.[1]

---

[1] Of the 5 proposed instructions thus summarily disposed of, 3 explained that gross negligence was necessary for recovery. The jury was so informed, and there was no question but that the jury understood that the plaintiffs must prove that there was gross negligence proximately causing their injuries before the plaintiffs were entitled to recover. Another defined "guest"; and, again, there was no question but that the plaintiffs were guests in the defendant's car and their status was never an issue. The other set forth a slanted paraphrase of RCW 46.08.080, and stated that a state statute provided that a person riding in an automobile as a guest without payment for the ride would have no right to recover damages against the host-driver though he was negligent, but only if there was gross negligence on his part.

What possible purpose could have been served by giving such an instruction when instruction No. 4, heretofore quoted, had already

These two proposed instructions were as follows:

To help you understand the distinction between "negligence" and "gross negligence," I will define "negligence," for you.

When I use the word "negligence" in these Instructions, I mean the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence. (Proposed instruction No. 7)[2]

or

"In order to constitute 'gross negligence,' there must be more than ordinary negligence, for the two are distinguishable, the distinction being one of degree. 'Gross negligence' means just what it indicates, gross or great negligence, that is, negligence in a very high degree, or the absence of even slight care. . . ." (Proposed instruction No. 10)

The defendant is here saying that the trial court should have brought the distinction between negligence and gross negligence into sharper focus and, specifically, should have told the jury that "gross" negligence means "great" negligence—that is negligence in a very high degree, or the absence of even slight care.

Except for the word "even" in the last line, which should have been omitted, a combination of proposed instructions

---

told the jury that plaintiffs had the burden of proving by a fair preponderance of the evidence that the defendant was grossly negligent and that such gross negligence was a proximate cause of injury and damages claimed?

We held the language of the statute sufficient, in *Osborn v. Chapman,* 62 Wn.2d 495, 384 P.2d 117 (1963), to explain the nature and effect of the change in the relationship of the parties in a host-guest situation, but have never declared it to be the exclusive method by which the relationship and standard of care are to be described. *Nist v. Tudor, ante* p. 322, 407 P.2d 798. The jury was adequately instructed on that phase of the case, though not in the words of the statute, and there never was a request for an instruction in the words of the statute.

[2]This proposed instruction was not included in the record, and there was no exception to the trial court's failure to give it. We quote it from the defendant's brief merely to make clear the defendant-appellant's contention with reference to proposed instruction No. 10.

(7 and 10) is in line with our recent suggestions in *Nist v. Tudor, ante* p. 322, 407 P.2d 798 (1965).

We have been seriously concerned, not with the accuracy of our definition of gross negligence as being the want or lack of slight care, but with just what that definition might mean to a juror, or even to a trial judge. We have had a succession of appeals in which trial judges have taken cases from the jury because there was evidence of some care, and it was reasoned that if there was any care there was slight care, hence, no gross negligence;[3] and other cases in which the same contention was made by counsel on appeal.[4] In *Nist v. Tudor, supra,* written by Judge Hale, "another study of gross negligence" was made in an effort to suggest to counsel and to trial judges certain guide lines which, if followed, would amplify our definition of gross negligence so that it might be more readily applied by the trial court in given situations. Briefly stated, we there suggest that gross negligence should be closely related to the more readily understandable concept of ordinary negligence. We say:

> It means . . . gross or great negligence, . . . substantially and appreciably greater than ordinary negligence. Its correlative, failure to exercise slight care, means not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence.

It was also pointed out that "In determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor."

The defendant's requested instruction No. 10 was not as comprehensive as suggested in *Nist v. Tudor, supra,* but it was clearly heading in that direction. It would not have

---

[3]*Nist v. Tudor, ante* p. 322, 407 P.2d 798 (1965); *Trudeau v. Haubrick,* 65 Wn.2d 286, 396 P.2d 805 (1964); *Miller v. Treat,* 57 Wn.2d 524, 358 P.2d 143 (1960).

[4]*Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021 (1964); *Sullivan v. Watson,* 60 Wn.2d 759, 375 P.2d 501 (1962); Eichner v. Dorsten, 59 Wn.2d 728, 370 P.2d 592 (1962); *Emery v. Milk,* 62 Wn.2d 617, 384 P.2d 133 (1963).

been error to give the requested instruction, and we could wish that it had been given. But the trial court did not have the benefit of our "study" in *Nist v. Tudor, supra,* and while further amplification of our definition of gross negligence would have been desirable, the trial court instructed in accordance with our definition of gross negligence, and it was not reversible error to fail to give amplified instructions. *Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021 (1964). *Nist v. Tudor, supra,* does not attempt to lay down a mandate—that trial courts must instruct as we have suggested; we have but expressed the view that our definition of "gross" negligence would be more intelligible if amplified as we have indicated.

There remain for consideration two other assignments of error.

Defendant complains that his counsel was not permitted, in his opening statement, to explain the issues. In that statement, defense counsel said:

> First the issues in this case. This involves the Host-Guest Statute which, under normal circumstances provides that a guest cannot recover from a host-guest driver with no payment for the ride, which is the case here.

The court sustained an objection to this statement on the ground that it was an argument. The jury was excused and a discussion followed. The trial court indicated that defense counsel could tell the jury that gross negligence was involved and that it is different from ordinary negligence, but that any definitions would be given by the court. The trial court also offered to consider any authorities that defense counsel might have, but counsel had none.

Defense counsel then proceeded with his statement, without further objection, and concluded as follows:

> I think after you have heard all of the evidence it will be clear to you that Mr. Goebel was not guilty of any gross negligence, as distinguished from simple negligence, and that is the issue here in this case.

The control of the statement of issues at the opening of the case is within the sound discretion of the trial court.

The last quoted paragraph did set forth the real issue. We find no error in the trial court's ruling.

■ Defendant's final assignment of error was based on the refusal of the trial court to give a proposed instruction:

> "You should disregard any testimony which you believe to be contrary to uncontroverted physical facts established by the evidence." (Proposed instruction No. 15)

No authority for the giving of the instruction is cited, except *Cox v. Polson Logging Co.*, 18 Wn.2d 49, 66, 138 P.2d 169 (1943), and we there said:

> While the requested instruction might with propriety have been given as a precautionary admonition to the jury, the failure to give it does not, in our opinion, constitute reversible error. In all the cases wherein that doctrine was announced by this court, it was invoked as the basis for setting aside a verdict which the court itself found to be contrary to the physical facts.

The jury was properly instructed on direct and circumstantial evidence; told that it was the sole and exclusive judge of the evidence, and of the credibility of the several witnesses, and of the weight to be attached to the testimony of each. In argument, counsel doubtless got all of the mileage possible out of the claimed inconsistencies between the testimony as to defendant's skid marks and the testimony of the witness Rogers. There was no error in refusing the claimed instruction.

We find no basis for defendant-appellant's assertion that there was not sufficient evidence of gross negligence to go to the jury, and no error in the court's refusal to give any of the requested instructions which formed the basis of defendant-appellant's other assignments of error.

Judgment affirmed.

FINLEY, WEAVER, OTT, HUNTER, HAMILTON, and HALE, JJ., concur.

ROSELLINI, C. J. (concurring in the result)—I concur in the result reached by the majority. However, I do not

approve the adoption of the attempted redefinition of "gross negligence" contained in *Nist v. Tudor, ante* p. 322, 407 P.2d 798 (1965). My views are expressed in that case.

DONWORTH, J., concurs with ROSELLINI, C. J.