[No. 39615.    Department Two.    April 11, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. PETE WEBSTER HAYES, *Appellant*.*

*Reported in 439 P.2d 978.

*Van Buskirk & Haas,* by *Henry Haas,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Joseph D. Mladinov,* and *Eugene G. Olson,* for respondent.

FINLEY, C. J.—In the early morning hours of November 9, 1966, a burglar alarm at the Tacoma Police Department indicated that someone had entered a building located at South 17th and Tacoma Avenue. Within minutes the police arrived at the building, and found appellant hiding inside. Officers handcuffed appellant's arms behind his back, and Officer McDonough escorted him toward a waiting paddy wagon.

McDonough testified that when they reached the sidewalk, appellant stopped and said, "Stand aside." The officer felt something against his ribs and saw that it was a gun held by appellant. (The record reveals that although appellant's arms were cuffed behind his back, he managed to draw the gun from its place of concealment on his person, and point it at the officer.) As McDonough overpowered him, appellant said, "I'm going to kill you," and the gun discharged without injuring the officer. A search of appellant revealed a holster and the sum of $273.72, which amount was later determined to be missing from the cash box in the building.

Appellant appeals his conviction of second-degree burglary and first-degree assault.

A pretrial order suppressed evidence obtained through interrogation and by a breathalizer test administered to appellant shortly after his arrest. During direct examination, Officer McDonough testified as follows:

Q: What did you do upon arrival at the station? A: I arrived at the station and I began to interrogate Pete Hayes. MR. HAAS: Your Honor, I'm going to make an objection at this point to any testimony regarding that interrogation. We have an order in the file, your Honor, which I think will take care of that problem. THE COURT:

I have read the order. MR. HENDRY: Conceded that it's been suppressed. THE COURT: I have read the order and it so says. Q: What did you do then at the station, Lieutenant? A: Before or after the interrogation? Q: After. A: After the interrogation was completed? Q: Yes. A: After the interrogation was completed, I instructed three officers to take Pete Hayes in for a breathalizer test.

At that point defense counsel objected and moved for a mistrial. The motion was denied, and the jury was instructed to disregard the answer.

Appellant contends that reference to the breathalizer test early in the trial prejudiced his defense of intoxication; that once the jury became aware of the test, any subsequent testimony relating to his defense would be suspect, absent the results of the test.

■■ The issue is whether the remarks, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so tainted the entire proceeding as to deny the accused a fair trial. *See State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962); *State v. Plumley,* 65 Wn.2d 592, 398 P.2d 714 (1965). A jury is presumed to have reached a verdict from the evidence the court permits them to consider, unless it is apparent from the record that they would not have reached the verdict had the inadmissible evidence been kept from their knowledge. *State v. Johnson, supra,* at 29; *State v. Priest,* 132 Wash. 580, 584, 232 Pac. 353 (1925). On the basis of the record before us, we are satisfied that appellant was not prejudiced by the testimony, or by the trial court's handling of the matter. The result of the breathalizer test was revealed to the jury later in the trial, in a manner which we will discuss. There was no abuse of judicial discretion in denying the motion for mistrial. *See State v. Smith,* 72 Wn.2d 479, 434 P.2d 5 (1967).

Appellant called Officer Nelson, who had observed appellant, and who had conducted tests to determine the degree of intoxication. Direct examination was limited to *physical* tests administered by the officer. On cross-examination the

state questioned Officer Nelson as to *chemical* tests administered to appellant. Defense counsel's objection was overruled. The officer testified that he had administered a breathalizer test, and that appellant had shown a percentage of blood alcohol of .07 on a scale from .00 to .40. Nelson explained to the jury that the intoxication point is considered to be .15.

Appellant contends that questioning Nelson as to physical tests for intoxication did not clear the way for examination as to chemical tests; that chemical tests, although within the general field of tests to determine intoxication, are not the same as nor related to physical tests.

When a subject has been opened on direct examination, the cross-examination may develop and explore the various phases of that subject. *Wilson v. Miller Flour Mills,* 144 Wash. 60, 66, 256 Pac. 777 (1927); *State v. West,* 70 Wn.2d 751, 424 P.2d 1014 (1967). When degree of intoxication is at issue, chemical tests are as relevant as physical tests, and are within the scope of examination once the subject is opened. We are satisfied that the challenged evidence comes within the principal of *Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 74 Sup. Ct. 354 (1954). It is one thing to say the state cannot make affirmative use of evidence which has been suppressed by pretrial order. It is quite another to say that appellant can turn the pretrial order into a shield against contradiction.

Appellant urges further that the court erred by allowing Officer Nelson to relate the result of the breathalizer test without first establishing a proper foundation for its admissibility.

Four requirements to establish the reliability of a particular breathalizer test were set down in *State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960). These four requirements were fully met in the instant matter, but only after the jury heard the result of the test.

Appellant does not challenge the accuracy of the test, but complains that the state "got the cart before the horse." He does not suggest how he was prejudiced or

deprived of a fair trial by the inverted sequence, other than to assert that once the result of such a test is related to the jury and explained, a cautionary instruction would not cure the error if a deficiency is later disclosed which indicates the test was unreliable. We offer no opinion on that assertion, since such a situation is not before us. In the instant matter no deficiency in the foundation necessary for the admissibility of such evidence was disclosed. We do not necessarily condone the order of proof followed by the state, but we can find no prejudice resulting to appellant.

Appellant argues that two instructions to the jury were so contradictory as to confuse and mislead. Instruction No. 12 was as follows:

> The intent with which an act is done is a mental process and as such generally remains hidden within the mind where it is conceived and is rarely, if ever, susceptible of proof by direct evidence, but must be inferred or gathered from outward manifestations by the words or acts of the party entertaining them, and the facts or circumstances surrounding or attendant upon the act with which it is charged to be connected.

Instruction No. 17, which was requested by appellant, was as follows:

> The intent to kill and murder J. A. McDonough cannot be presumed or implied but must be proved to you by evidence sufficient to convince you beyond a reasonable doubt.

We can see no conflict between instructing the jury on the one hand that intent to kill cannot be *presumed,* and on the other hand that intent may be *inferred or gathered from words and acts* of the accused. The test in such a situation is not a matter of semantics, but whether the jury was misled as to its function and responsibilities under the law. *State v. LaPorte,* 58 Wn.2d 816, 365 P.2d 24 (1961); *State v. Redden,* 71 Wn.2d 147, 426 P.2d 854 (1967). Reading all the instructions together, we find that the jury was properly advised of its function and responsibilities.

Appellant urges that he should have been charged with first-degree burglary, rather than second-degree burglary

and first-degree assault, since he is accused of burglary of a store and assault while attempting to escape.

RCW 9.19.010 defines first-degree burglary as follows:

> Every person who, with intent to commit some crime therein, shall enter in the nighttime, the dwelling house of another in which there shall be at the time a human being—
>
> (1) Being armed with a dangerous weapon; or
>
> (2) Arming himself therein with such a weapon; or
>
> (3) Being assisted by a confederate actually present; or
>
> (4) Who, while engaged in the nighttime in effecting such entrance, or in committing any crime in such building or in escaping therefrom, shall assault any person;
>
> . . .
>
> . . . shall be guilty of burglary in the first degree
>
> . . . .

RCW 9.19.020 defines second-degree burglary as follows:

> Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree . . . .

■ The phrase "such building" in subdivision (4) of the section defining first-degree burglary clearly refers to "the dwelling house of another" and not to "any building" as used in the following section. Appellant is accused of breaking and entering a store, not a dwelling house. By assaulting the officer, he did not convert the offense into first-degree burglary. He was properly charged.

We have carefully considered appellant's remaining assignments of error, and found them to be without merit. To discuss them would unduly extend this opinion.

The judgment is affirmed.

HILL, HAMILTON, and NEILL, JJ., and LANGENBACH, J. Pro Tem., concur.