[No. 81-40937-1.    Division One.    November 17, 1969.]
Panel 1

THE CITY OF SNOHOMISH, *Appellant,* v. ALLAN SWOBODA, *Respondent.*

*Frank B. Carr,* for appellant.

*Stanley L. Conroy,* for respondent.

JAMES, C. J.—Defendant Swoboda was charged with violating an ordinance of the City of Snohomish which makes unlawful the keeping of explosives within the city limits. He was found guilty in police court and appealed. In superior court, his motion to suppress the evidence of firecrackers found in his home was granted. By appropriate writ,

the order suppressing the evidence is brought to us for review. The facts as they appeared to the trial judge are as follows:

The county fire marshal and police officers of the City of Snohomish received numerous complaints of indiscriminate use of firecrackers by schoolchildren. Information gleaned from various informants cast suspicion upon defendant, a Snohomish merchant. The officers conceived a plan by which they hoped to discover whether their information was reliable. They learned that a 12-year-old boy, Billy Dale Henry, had stated that he had purchased firecrackers from either the defendant or members of his family. They secured Billy Dale's cooperation and arranged for him to go to defendant's residence and attempt to purchase firecrackers with marked money. Pursuant to plan, Billy Dale walked to defendant's home. Police Officer Hatch and Fire Marshal Fenter drove to the vicinity of defendant's home and took up a position in their car some 150 feet from the house, at a point from which they could observe the front door and two side windows of the living room. Billy Dale knocked on the front door and was admitted. He passed from view for a few seconds and then came into view at a window together with another boy. The trial judge found, as did the police court judge, that the officers saw the transfer of some object from one person to another. Both officers admitted that they were not able to identify the object transferred.

Billy Dale left defendant's home, went to the patrol car, and reported that he had purchased firecrackers. These he gave to the officers. He related that he met a boy in the house whom he did not know. (Billy Dale knew the four Swoboda children.) When he told the boy that he wished to buy a dollar's worth of firecrackers, the boy gave him a funny look, sat down in a chair, and said nothing. Billy Dale told the boy that he had previously bought firecrackers from defendant's daughter, Cindy, and the boy remained silent. Billy Dale then asked to use the telephone and called Cindy at work. Billy Dale talked to Cindy briefly

and handed the telephone to the other boy, who talked to Cindy. The boy then sold Billy Dale the firecrackers, receiving the marked dollar bill as payment.

The officers then went to the house and met a boy on the front porch. They asked him if he had sold firecrackers to Billy Dale. He replied that he had not. The boy, whose name was Jastad, entered the house, and the officers followed him inside. There they confronted a second boy, and the fire marshal asked him if he were the one who sold the firecrackers. This boy, whose name was Laidlow, admitted that he had made the sale, and he was arrested. Thereafter, when requested to do so by the officers, he produced the marked dollar bill. He was then taken to the car and held in custody by another officer.

About this time Cindy arrived. When apprised of the situation, she asked whether the officers had a warrant. One of the officers said that "for practical purposes", they had a warrant. Then one of the officers telephoned defendant's place of business to request his presence. He appeared shortly.

When defendant arrived at his home the officer told him of Laidlow's arrest and ordered defendant to produce all of the firecrackers he possessed. He asked if the officers had a warrant and was told that they did not. However, the officers told defendant in no uncertain terms that they had the right to make a search of his home as an incident to the arrest of Laidlow. They demanded that he either produce the firecrackers or submit to a search of the entire house. Defendant then instructed Cindy to get the firecrackers. She did, and the officers seized them. Defendant was thereafter arrested and charged with unlawfully keeping explosives.

The trial judge based his order suppressing evidence upon his conclusion that the warrantless arrest of Laidlow was unlawful because the misdemeanor (the sale of firecrackers) had not been committed *in the officers' presence*.

We do not agree. Clearly, the officers had probable cause to believe that a misdemeanor had been committed. They

had sent their agent into the house with marked money for the express purpose of purchasing firecrackers. Their agent made the purchase, described the transaction, and delivered the firecrackers to them. And, prior to his arrest, Laidlow admitted making the sale.

The critical question is, did the officers have probable cause to believe that a misdemeanor had been committed "in their presence"? The concept of "presence" has been equated with personal knowledge acquired at the time through the senses. *Garske v. United States,* 1 F.2d 620 (8th Cir. 1924). The requirement of physical presence is satisfied whenever sensory perception permits a reasonable inference that a misdemeanor is being committed. In *Tacoma v. Harris,* 73 Wn.2d 123, 436 P.2d 770 (1968), officers who had been forewarned by earlier complaints *heard* the sounds of an apparent misdemeanor, a noisy disturbance of the peace. The officers were on the street, and the sounds emanated from a house. Here the officers *saw* through the window—admittedly not clearly—but, coupled with their prior knowledge, they saw enough to constitute probable cause to believe that the anticipated misdemeanor (the illegal sale of firecrackers) was indeed being committed. This knowledge, together with Laidlow's admission, furnished probable cause for his arrest. We hold that the arrest of Laidlow was lawful.

Is, then, the evidence consisting of the firecrackers found in defendant's home admissible to support the charge that he kept explosives?

It should first be noted that the circumstances under which the firecrackers were produced were clearly tantamount to a search. The officers asserted a legal right to search the home and assured the defendant that they would do so unless the firecrackers were produced. By constitutional standards, evidence produced in response to a threat to search, coupled with an assertion of a right to do so and the ability to enforce that asserted right, is the product of a search. *Dearing v. State,* 226 Ind. 273, 79 N.E.2d 535 (1948).

The critical question, then, is whether the search of defendant's home may be judicially approved as incident to the lawful arrest of Laidlow.

By statute, a law officer is prohibited from searching a home without first having obtained a search warrant:

> It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided.

RCW 10.79.040. Few statutes authorize the issuance of search warrants.[1] No statute authorizes the issuance of a warrant to search for firecrackers or explosives.[2]

RCW 10.79.040 has been interpreted to mean precisely what it says.

> Respondent argues that, since the law makes no provision for the issuance of search warrants in cases of this sort, none is required. The conclusion which respondent thus seeks to draw from the stated premise is *non sequitur*. Art. I, § 7, of the state constitution provides that no person shall be disturbed in his private affairs, *or his home invaded,* without authority of law. In the absence of some statute which, under the permissible limits of the constitutional provision, grants such authority, no police officer may lawfully enter a person's home for the purpose of making a search therein, prior to the arrest, or the issuance of a warrant for the arrest, of such person.

---

[1]See, *e.g.,* RCW 10.79.010 (stolen or embezzled property), RCW 10.79.015 (counterfeit coins, gambling apparatus and evidence material to homicide), RCW 15.17.190 (horticultural products), RCW 15.40.040 (substandard oleomargarine), RCW 15.48.130 (non-conforming agricultural or vegetable seeds), RCW 15.53.230 (non-conforming commercial feed), RCW 69.40.100 (dangerous drugs), RCW 75.08.180 (illegal food fish or shell fish), RCW 77.12.120 (unlawfully taken wild game).

[2]But see RCW 70.77.435, which empowers the state fire marshal or his deputy to seize contraband fireworks. No search warrant is authorized, however.

A number of statutes authorize a "seizure" by a law officer of particular items of contraband: see, *e.g.,* RCW 9.05.130 (objects of anarchy or sabotage), RCW 15.36.070 (adulterated milk), RCW 15.52.170 (useless animal remedy), RCW 9.47.110 (gambling devices), RCW 9.41.220 (machine guns). None of these statutes authorizes a magistrate to issue a search warrant.

(Italics in original.) *Tacoma v. Houston*, 27 Wn.2d 215, 220, 177 P.2d 886, 889 (1947).

Here, as the evidence established, the officers asserted the right to search the home as incident to a lawful arrest. As an abstract statement of an accepted rule of law, the officers were on firm ground. *State v. Thomas*, 183 Wash. 643, 49 P.2d 28 (1935). Immunity from home searches and seizures is afforded by the United States constitution:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. 4.

■ Cases, both federal and state, too numerous to require citation, recognize that the immunity is not from *all* searches but only those which are *unreasonable*. The right to make a reasonable warrantless search as incident to a lawful arrest has been recognized so frequently as to be beyond question. See *State v. McCollum*, 17 Wn.2d 85, 136 P.2d 165, 141 P.2d 613 (1943). The controlling consideration here is the *reasonableness* of the search. Only two reasons can justify a warrantless search incident to a lawful arrest. First, an officer may search for weapons which might endanger him or aid an escape, and second, he may seize evidence *of the crime for which he arrests*. These are the only grounds upon which a warrantless search can be constitutionally justified. *State v. Michaels*, 60 Wn.2d 638, 374 P.2d 989 (1962). The principle is well stated in *United States v. 1013 Crates of Empty Old Smuggler Whiskey Bottles, etc.*, 52 F.2d 49, 51 (2d Cir. 1931):

> Such searches are reasonable when they are fairly within the category of mere incidents of the arrest for the purpose of securing the safety of the officers, as when concealed weapons may be possessed, or for getting the subject-matter or evidence of the crime for which the arrest has been made. They are unreasonable and, because so, unlawful, when the arrest may fairly be said to have been but an excuse for a general exploratory search.

The search of defendant's home can be justified for neither of these reasons. In the first place, it was obvious to the officers that Laidlow had concealed no weapon and was no threat to their safety. In the second place, the officers had already obtained *all* of the evidence pertaining to the crime for which Laidlow was arrested. His crime was the sale of firecrackers, not the keeping of explosives as charged against defendant. The firecrackers which he had sold to Billy Dale were already in the officers' possession, as was the marked money. The evidence was secure and Laidlow admitted his guilt. A search of defendant's home under these circumstances could not be justified as reasonably incident to the arrest of Laidlow.

On the basis of his conclusion that the arrest of Laidlow was unlawful, the trial judge suppressed *all* evidence acquired after the officers entered defendant's home. Our ruling that the arrest of Laidlow was lawful limits the proper scope of the order of suppression. The evidence consisting of the firecrackers sold by Laidlow and the marked money paid him will not be suppressed as unlawfully seized. All evidence which is the product of the search of defendant's home is suppressed.

Affirmed in part, reversed in part, and remanded.

FARRIS and STAFFORD, JJ., concur.