[No. 605-1.    Division One—Panel 2.    March 15, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST JAMES STRINGER, *Appellant*.

486

*Houger, Garvey & Schubert* and *M. John Bundy*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Philip Y. Killien, Deputy*, for respondent.

SWANSON, J.—Ernest James Stringer was convicted of possessing heroin in violation of RCW 69.33.230.[1] He appeals.

Late one evening in February, 1970, two police officers entered the St. George Apartments at 14th Avenue and Yesler Way in Seattle, Washington, to check unoccupied rooms for unlawful activity. This was routinely done at the apartment management's request. The door to room No. 328 was open, and the apartment appeared vacant. While looking around inside the room the officers happened to glance out of an open window across an air vent and into the open window of an adjoining apartment where, as Officer David Smith testified, they saw defendant Stringer

> sitting at the table with his arm outstretched, his left arm outstretched and he had a tourniquet which appeared to be a piece of cloth which later turned out to be a necktie tied around the lower part of his upper arm just above the elbow and he had a hypodermic syringe with a needle

---

[1] RCW 69.33.230 provides: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter."

in his right hand and his thumb on the plunger and it was inside his arm and the plunger was almost all extended in the full position and he was slowly pushing the plunger down apparently injecting some sort of liquid into the arm. And I observed he moved his needle from his arm and held it up close to his face and took a look at the point and appeared to be looking at the needle, then re-insert it into his arm and continued to push the plunger down.

Officer David Smith then left room No. 328 and knocked on the door of the adjacent apartment No. 319. Another individual in apartment No. 319 with defendant Stringer called out, "[W]ho is it[?]" to which he replied, "[I]t's police officer Smith." Meanwhile Officer Jerry Smith was watching from room No. 328. He told the jury

the Defendant removed the needle from his arm and placed it on the table and took the syringe off and placed it on the table. Upon getting all, both items to the table, he picks the items up. . . . The Defendant takes the items off the table, stands up and places them in the window sill right in front of me. If he had just looked up he could see me. I was looking straight at him.

Officer David Smith explained how, after knocking and identifying himself, he gained admission to apartment No. 319:

He asked me what I wanted. I stated that I wanted to talk to the man that was sitting in the kitchen and he stepped back and opened the door for me and allowed me to pass.

He then placed the defendant under arrest. Officer Jerry Smith, who had remained behind to observe the arrest from room No. 328, now joined his partner in No. 319 and seized the paraphernalia including the hypodermic syringe, tourniquet (an old necktie), and a white folded packet—all of which he had observed the defendant place in the window sill. A subsequent chemical analysis confirmed that the powder in the seized folded packet was heroin.

■ ■ Defendant first assigns error to the trial court's refusal to grant his motion to suppress the physical evidence seized at the time of the arrest. The trial court con-

cluded, after a full hearing prior to trial on defendant's motion to suppress, that the police officers had reasonable grounds to believe a felony was being committed in their presence, and because of exigent circumstances an arrest warrant was not necessary.[2] *See State v. Bellows,* 72 Wn.2d 264, 266, 432 P.2d 654 (1967); *State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970). The defendant nevertheless argues that the officers had no right to go into apartment No. 319 without first obtaining a search warrant. Stringer claims the officers entered by force and without the consent of any occupant. This contention is directly contrary to the trial court's finding that

> The latter officer then joined his partner who had just been admitted to the apartment by another man of unknown identity, whom the officers recognized as a co-tenant of room No. 319.

We have examined the record, according to the mandate of *State v. Hoffman,* 64 Wn.2d 445, 451, 392 P.2d 237 (1964), approved in *Morgan v. Rhay,* 78 Wn.2d 116, 120, 470 P.2d 180 (1970), and believe that clear and positive evidence supports the trial court's finding that the officers' entry was neither forced nor the result of threat or coercion. *See McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965); *State v. Rye,* 2 Wn. App. 920, 471 P.2d 96 (1970). After the arrest it is unquestionably proper to conduct a reasonable search for evidence of the crime for which the arrest is being made. *State v. Michaels,* 60 Wn.2d 638, 643, 374 P.2d 989 (1962); *Snohomish v. Swoboda,* 1 Wn. App. 292, 297, 461 P.2d 546 (1969). However, no search was necessary. Officer Jerry Smith knew where the evidence was before entering the apartment. He simply confiscated evidence of the crime

---

[2] "That the officers under these circumstances had no need for a search warrant or an arrest warrant in order to enter apartment No. 319 of the St. George Apartments on the night in question and in order to place the defendant under arrest, because they had reasonable grounds to believe that a felony was being committed in their presence by the defendant, and because exigent circumstances as defined by recent cases existed in this particular situation such as to vitiate the need for a search warrant or an arrest warrant." Conclusion of Law 4.

for which the arrest was made. The trial court correctly denied the motion to suppress.

■ Secondly, appellant argues that the trial court erred in denying the motion to dismiss for insufficient evidence of possession. Here we are not relying upon circumstantial evidence but, rather, on direct evidence of possession of heroin. As Officer Jerry Smith testified:

Q Just what items were there that he placed on that window sill? A I observed him place the syringe, the tourniquet and a white folded piece of paper. I didn't—it was just a piece of paper at this time. Q And where had that piece of paper been up to then? A On the table right behind the Defendant. Q How close to him was it? A Well, right where he was shooting himself and it was laying right there near the Defendant.

Officer David Smith testified that the piece of paper was "[n]ot more than a few inches or less than a foot" away from defendant's arm before he went to knock on the door. This is substantial evidence of actual possession.[3] *See State v. Pristell*, 3 Wn. App. 962, 964, 478 P.2d 743 (1970). It should be noted that the factual situation here is easily distinguished from that in *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969), relied upon by defendant. In *Callahan*, the circumstantial evidence of defendant Callahan's possession was directly contradicted by testimony of ownership by another person. The motion to dismiss for insufficient evidence was properly denied.

■ Defendant then asserts that the trial court erred in refusing his proposed instructions and in submitting instruction 12 to the jury. Instruction 12 provides:

Possession may be either actual or constructive. Actual possession occurs when property is in the personal custody of a person charged with possession. Constructive possession occurs when there is no present actual physical pos-

---

[3]Defendant contends that, because no heroin was found in the syringe and needle the day following the arrest, the evidence of possession is limited to proximity and momentary handling only. Ann McKenney, the state's chemical analyst, however, testified that although there was insufficient residue to conduct a test, heroin could have been used in the needle the night before the test.

session, but there is ownership of, or dominion and control over, the goods.

Defendant does not say this is an incorrect statement of the law; rather, he takes exception to the instruction on the basis that it does not go further, as do his proposed instructions, and indicate that the mere handling of the drug by itself is not a sufficient basis on which to find possession. Instruction 12 correctly states the law. To include the additional statement defendant suggests would come dangerously close to a comment on the evidence. The instruction given adequately and correctly defines possession. Defendant's proposed instructions were properly refused. *See State v. Schoel*, 58 Wn.2d 58, 360 P.2d 561 (1961), and *Dole v. Goebel*, 67 Wn.2d 337, 407 P.2d 807 (1965).

■ Finally, defendant assigns error to the trial court's denial of his objection to the testimony of Ann McKenney, the state's expert witness on chemical analysis. As our Supreme Court has stated many times, the decision as to the qualifications of an expert witness is a matter within the sound discretion of the trial court. *State v. Tatum*, 58 Wn.2d 73, 360 P.2d 754 (1961). We find no abuse of that discretion.

Judgment affirmed.

FARRIS, A.C.J., and JAMES, J., concur.