[No. 1233-1.    Division One—Panel 1.    April 9, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM M. BELL, *Appellant*.

WILLIAMS, J., dissents by separate opinion.

*Williams, Lanza, Kastner & Gibbs* and *Gerald A. Palm,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Corydon J. Nelsen, Deputy,* for respondent.

CALLOW, J.—William M. Bell was charged with two counts of unlawfully selling dangerous drugs. The trial resulted in a jury verdict of guilty as to both counts. The defendant appeals.

The defendant is an osteopathic physician with offices in Seattle. Two police officers came to his office and asked for some amphetamine tablets by a trade name. When the doctor asked if they were patients, they replied they were, and the doctor then sold each 30 tablets of the drug they had requested.

The chronology of events is essential to a discussion of the issues raised:

1. March 1, 1971, the sale of the drugs.

2. March 9, 1971, the filing of the charge in district justice court and the arrest of the defendant.

3. May 21, 1971, RCW 69.40.060 was repealed effective this date. This statute was in effect at the time of the sale of the drugs. It read in pertinent part:

> It shall be unlawful for a person, . . . to sell, . . . any of the foregoing substances, . . . or any other drug which is required by any applicable federal or state law or federal regulation . . . to be used only on prescription, except upon the written or oral order or prescription of a physician, `. . .` and shall not be refilled without the written or oral order of the prescriber: *Provided,* That the provisions of this section shall not apply to the sale at wholesale by drug jobbers, . . . or to physicians . `.`. licensed to practice in this state.

4. May 21, 1971, RCW 69.50.308 was not in effect until this date. It reads in part:

> (a) Except when dispensed directly by a practitioner authorized to prescribe or administer a controlled substance to an ultimate user, no controlled substance in

Schedule II may be dispensed without the written prescription of a practitioner.

. . .

(d) A valid prescription or lawful order of a practitioner, in order to be effective in legalizing the possession of controlled substances, must be issued in good faith for a legitimate medical purpose by one authorized to prescribe the use of such controlled substance. An order purporting to be a prescription not in the course of professional treatment is not a valid prescription or lawful order of a practitioner within the meaning and intent of this chapter; and the person who knows or should know that he is filling such an order, as well as the person issuing it, can be charged with a violation of this chapter.

(e) A controlled substance included in Schedule V shall not be distributed or dispensed other than for a medical purpose.

5. April 15, 1971, arraignment and entry of plea by the defendant in district justice court.

6. May 18, 1971, the filing of the information in superior court.

7. July 27, 1971, trial of the case.

In effect at the time of the sale of the drugs on March 1, 1971, was also RCW 69.40.064. It reads as follows:

A prescription, in order to be effective in legalizing the possession of dangerous drugs, must be issued for a legitimate medical purpose by one authorized to prescribe the use of such dangerous drugs. An order purporting to be a prescription issued to an addict or habitual user of dangerous drugs, not in the course of professional treatment is not a prescription within the meaning and intent of this section; and the person who knows or should know that he is filling such an order, as well as the person issuing it, may be charged with violation of this chapter. A legitimate medical purpose shall include use in the course of a bona fide research program in conjunction with the hospital or university.

To reiterate, on March 1, 1971, the date of the alleged crime, RCW 69.40.060 and 69.40.064 were in effect and applicable, and RCW 69.50.308 was not.

The defendant objects to the instruction given which reads:

Under the laws of the State of Washington, sale or dispensing of a dangerous drug is a crime, except upon the written or oral order or prescription of a physician, surgeon, dentist, or veterinary surgeon duly licensed to practice in the State of Washington.

However, a physicain [*sic*] may sell or dispense dangerous drugs if in good faith and in the course of his professional practice for theraputic [*sic*] purposes only.

The instruction given informed the jury that a physician could sell a dangerous drug on oral order if he did so:

1. in good faith,
2. in the course of his professional practice, and
3. for therapeutic purposes only.

The requirements enumerated in the instruction for sale by a physician to be legal were not the requirements that had to be fulfilled in order for a physician's sale to be legal on March 1, 1971, the date of the commission of the alleged crime. On that date, the provisions of RCW 69.40.064 only required that a legitimate medical purpose exist in order for a physician to sell on oral order. In this case, the evidence discloses that the sale was from the physician, as seller, to the officers who claimed to be patients, as purchasers. The instruction improperly informed the jury that the physician's authority to sell drugs was limited to an extent greater than the statute applicable on March 1, 1971, actually limited such authority. The evidence could indicate negligent and careless conduct on the part of the physician when the drugs were sold, rather than criminal intent, if considered in the light of whether his conduct was for a "legitimate medical purpose." In the context of this evidence to instruct that the doctor was permitted to sell only for therapeutic purposes required the jury to find that unless the actions of the doctor showed a therapeutic purpose, his act was criminal. This was not the law at the time of the commission of the act.

A therapeutic purpose is defined as a purpose relating to the treatment of disease by remedial agents or meth-

ods. It implies that a curative or healing effect will follow. *Dorland's Illustrated Medical Dictionary* (23d ed. 1958). It carries a quasi-medical connotation. *See* RCW 18.57.170 (9). There is no such connotation to the term "legitimate medical purpose." "Legitimate" means lawful or legal. *Webster's Third New International Dictionary* (1969). In the context of the statute the term "legitimate" does not impose *specific* restrictions upon conduct by a physician in selling drugs. The term is not a narrowing term as is the term "therapeutic." We envision that to a layman a medical purpose could include research, diagnosis, tranquilization, stabilization, relief of pain and experimentation to find relief for a patient. These aspects are partially or totally excluded when a "therapeutic" purpose is required.

■■ Criminal statutes are to be strictly interpreted, cannot be extended by intendment and doubts as to whether conduct was criminal must be resolved in favor of a defendant. 1 R. Anderson, *Wharton's Criminal Law & Procedure* § 19, at 40 (1957). RCW 69.40.060 and 69.40.064 cannot be construed as saying the same thing as RCW 69.50.308 in different form. While these statutes dealt with the same subject matter and should be construed harmoniously if possible, when a *change* is enacted and one statute is repealed and another takes its place the new supersedes the former law. The doctrine of pari materia does not require the construction of that which the legislature has laid to rest as having the same meaning as the statute that has taken its place. *See* 2 J. Sutherland, *Statutory Construction* §§ 5201, 5202 (F. Horack, Jr. 3d ed. 1943). Where a material change is made in the wording of a statute, a change in legislative purpose must be presumed. *Graffell v. Honeysuckle*, 30 Wn.2d 390, 191 P.2d 858 (1948).

■ A newly enacted statute operates prospectively only unless a retroactive effect was the clear intent of the enacting authority. *State v. Ladiges*, 63 Wn.2d 230, 386 P.2d 416 (1963). However, an act which enlarges the prohibited area of conduct cannot be applied to make criminal that which was previously innocent. Such a construction of an

act would violate article 1, section 9 of the United States Constitution and article 1, section 23 of the Washington State Constitution prohibiting ex post facto laws. *Andrus v. McCauley,* 21 F. Supp. 70 (E.D. Wash. 1936); *State v. Hanlen,* 190 Wash. 563, 69 P.2d 806 (1937); *State v. Lopeman,* 143 Wash. 99, 254 P. 454 (1927).

With the principles set forth in mind, we hold it was reversible error to instruct in the terminology of RCW 69.50.308 which was not in effect on the date of the crime. The instruction subjected the defendant to the risk (a) that conduct not then forbidden could be found to have been forbidden; and (b) that the defendant violated such nonexistent prohibition. He could not be guilty of performing acts innocent when performed but culpable under a statute enacted thereafter.

█ Error is assigned to the failure to give the following proposed instruction:

> There is no statutory requirement under the laws of the State of Washington that a physician examine a person before administering, prescribing, or selling drugs to said person.
>
> You are further instructed that a prescription for drugs is not required. Drugs may be sold upon the written or oral order of a physician, surgeon, dentist or veterinary surgeon, duly licensed to practice in the State of Washington.

A trial court is not required to give negative instructions as to matters that will not support a conviction in a criminal case. It is unnecessary to explain those things which will *not* constitute a crime, though a court may do so in the interest of clarity. *State v. Brooks,* 73 Wn.2d 653, 440 P.2d 199 (1968); *State v. Harvey,* 57 Wn.2d 295, 356 P.2d 726 (1960); *State v. Hannigan,* 3 Wn. App. 529, 475 P.2d 886 (1970). If this proposed instruction had been given, it would have afforded further enlightenment to the jury and afforded assistance to the defendant in clearly presenting his theory of the case; however, it did not constitute prejudicial error to refuse it.

■ The state introduced evidence that one of the defendant's assistants previously had sold drugs illegally in his office. This evidence could be relevant to show the absence of accident or mistake or a common scheme or plan if participation by the defendant in these acts was shown and was necessary to prove an essential element of the crime charged. *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952). Since a retrial is necessary, the trial court will be in the preferable position at that time to evaluate whether the evidence then proffered meets the criteria for the admission of evidence of this kind as specified by *State v. Goebel, supra.*

■ It was not error to permit the criminologist from the laboratory of the police department to testify to the medical use of the drug for diet control. The decision as to the qualifications of a witness to testify as to a particular matter is within the sound discretion of the trial court. There was no abuse of that discretion. *State v. Tatum,* 58 Wn.2d 73, 360 P.2d 754 (1961); *State v. Stringer,* 4 Wn. App. 485, 481 P.2d 910 (1971); 2 J. Wigmore, *Evidence* § 555 (3d ed. 1940).

Assignments of error are raised which challenge the trial court's denial of motions made at the completion of all testimony. The evidence was sufficient to present the case to the jury for decision.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

HOROWITZ, C.J., concurs.

WILLIAMS, J. (dissenting)—I dissent.

The facts essential to be stated are these: Bell is an osteopathic physician with offices in Seattle. Two men, who were police officers, came to his office and asked for some amphetamine tablets by a trade name. Bell asked if they were patients, and they replied that they were. Without further inquiry, Bell then sold each of them 30 tablets of the dangerous drug which they had requested.

The pertinent portion of Laws of 1955, ch. 24, § 1, p. 164 (now RCW 69.50.308),[1] the statute under which Bell was charged, is as follows:

> It shall be unlawful for a person, firm, or corporation to sell, give away, [dangerous drugs] . . . except upon the written or oral order or prescription of a physician, surgeon, dentist, or veterinary surgeon licensed to practice in the state, and shall not be refilled without the written or oral order of the prescriber: *Provided,* That the above provisions shall not apply to the sale at wholesale by drug jobbers, drug wholesalers, and drug manufacturers to pharmacies or to physicians, dentists, or veterinary surgeons, nor to each other, nor to the sale at retail in pharmacies by pharmacists to each other or to physicians, surgeons, dentists or veterinary surgeons licensed to practice in this state; . . .

Bell's position is that he is specifically excepted from the prohibition of the statute because he is a physician and that the italicized portion of the following instruction, which the court gave, does not appear in the statute and is erroneous:

> Under the laws of the state of Washington, sale or dispensing of a dangerous drug is a crime, except upon the written or oral order or prescription of a physician, surgeon, dentist, or veterinary surgeon duly licensed to practice in the state of Washington.
>
> However, a physician may sell or dispense dangerous drugs *if in good faith and in the course of his professional practice for therapeutic purposes only.*

(Italics ours.)

Basically, the question is: Did the legislature in enacting RCW 69.40, entitled "Poisons and Dangerous Drugs," intend to except physicians from the prohibition of dispensing dangerous drugs absolutely, or did it except physicians from the prohibition only if the drugs were dispensed in good faith in the course of professional practice for therapeutic purposes?

---

[1]This statute was RCW 69.40.060 and was superseded by the Uniform Controlled Substances Act.

The purpose of RCW 69.40 is plain enough; it is to regulate the sale of dangerous drugs. In so doing, the legislature gave certain powers to allow physicians and others to prescribe and dispense drugs in the course of professional treatment for legitimate medical purposes. This is true because in another section of the act (RCW 69.40.064) it is provided:

A prescription, in order to be effective in legalizing the possession of dangerous drugs, must be issued for *a legitimate medical purpose* by one authorized to prescribe the use of such dangerous drugs. An order purporting to be a prescription issued to an addict or habitual user of dangerous drugs, not in the course of professional treatment is not a prescription within the meaning and intent of this section; and the person who knows or should know that he is filling such an order, as well as the person issuing it, may be charged with violation of this chapter. A legitimate medical purpose shall include use in the course of a bona fide research program in conjunction with a hospital or university.

(Italics ours.)

Bell contends that the language of this section, or words of similar impact, may not be used in the instruction because he was only charged with violating the portion of Laws of 1955, ch. 24, § 1, p. 164, above quoted. I do not agree, because the rule as stated in *State v. Houck,* 32 Wn.2d 681, 684, 203 P.2d 693 (1949) is:

Statutes in *pari materia* must be construed together. Statutes in *pari materia* are those which relate to the same person or thing, or the same class of persons or things; and in construing a statute, or statutes, all acts relating to the same subject matter or having the same purpose, should be read in connection therewith as together constituting one law. The object of the rule is to ascertain and carry into effect the intent of the legislature, and it proceeds upon the supposition that the several statutes having to do with related subject matters were governed by one spirit or policy, and were intended to be consistent and harmonious in their several parts and provisions.

*Accord, State v. Rinkes,* 49 Wn.2d 664, 306 P.2d 205 (1957);

*In re Cress,* 13 Wn.2d 7, 123 P.2d 767 (1942); *see also Beach v. Board of Adjustment,* 73 Wn.2d 343, 438 P.2d 617 (1968).

The instruction that sale could be made "if in good faith and in the course of his professional practice for therapeutic purposes only" encompasses the same limitations and paraphrases the statutory language "for a legitimate medical purpose." Even though deviation from the statutory language should not be encouraged, the test of an instruction is not a matter of semantics, but whether the jury was misled as to its functions and responsibilities under the law. *State v. Hayes,* 73 Wn.2d 568, 439 P.2d 978 (1968); *State v. La Porte,* 58 Wn.2d 816, 365 P.2d 24 (1961). Bell may not successfully urge upon the court that the statute gave him the authority to sell or dispense dangerous drugs in bad faith, outside the course of his professional practice for nontherapeutic purposes. This would be an absurd interpretation which we are not required to make. *State v. Warburton,* 97 Wash. 242, 166 P. 615 (1917). The rule is well stated in *State v. Rinkes, supra* at 667, as follows:

> Strict construction of a penal statute means merely that the punitive sanctions must be confined to such matters as are clearly and manifestly within the statutory terms and purposes. It does not mean that a forced, narrow, and over-strict construction should be applied to defeat the obvious intent of the legislature.

I believe that Bell's activities, as found by the jury, fall clearly and manifestly within the statutory terms and purposes of RCW 69.40 and that he was well aware of the provisions thereof. He cannot be considered to be a stranger to the act. Rather, in the practice of his profession, he would be required to know its provisions concerning the sale and dispensing of drugs. *See Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 502, 69 L. Ed. 402, 45 S. Ct. 141 (1924); *Omaechevarria v. Idaho,* 246 U.S. 343, 348, 62 L. Ed. 763, 38 S. Ct. 323 (1918).

Bell also assigns error to the failure of the court to give the following proposed instruction:

> There is no statutory requirement under the laws of

the State of Washington that a physician examine a person before administering, prescribing, or selling drugs to said person.

You are further instructed that a prescription for drugs is not required. Drugs may be sold upon the written or oral order of a physician, surgeon, dentist or veterinary surgeon, duly licensed to practice in the State of Washington.

The proposed instruction would, in effect, have advised the jury that physicians are unconditionally exempt from the act. I have rejected this theory for the reasons set forth above.

Bell assigns error to the introduction of evidence that one of his assistants had previously (1) sold amphetamines without prescription in his office and (2) intentionally recorded less than the correct amount of amphetamines sold. The assistant testified that she informed Bell of the sale of amphetamines without prescription shortly after each sale, and that the false record was made on Bell's instruction. All of this evidence was relevant for the purpose of showing the absence of accident or mistake and, also, a common scheme or plan to sell drugs in the office on a casual basis. *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952).

Bell claims that there was error in the introduction of the testimony of a lay witness as to the medical use of the dangerous drug. The witness testified from her own knowledge that the drug was used for diet control. It was therefore not a medical opinion requiring the testimony of an expert, but rather the statement of a fact within the knowledge of the witness. *Harris v. Saunders,* 113 Wash. 482, 194 P. 533, 198 P. 393 (1920).

Finally, Bell has challenged the sufficiency of the evidence. A review of the record discloses that there is substantial evidence to support the verdict of the jury.

The judgment entered upon the verdict should be affirmed.

Petition for rehearing denied May 17, 1973.

Appealed to Supreme Court May 25, 1973.